HORTON et al. v. THOMAS McNALLY CO.

(Supreme Court, Special Term, Westchester County. February 6, 1915.)

Receivers (§ 128*)—Receivers' Certificates—Claims Against Receiver—Priorities.

Where the receiver of an insolvent corporation, whose property consisted mainly of a contract with the city of New York, under order of court and to save a forfeiture of the contract undertook and performed it for the preservation of the insolvent's property and the protection of

its creditors, receiver's certificates given for money borrowed to finance and complete the contract were inferior to claims for administrative expenses, including fees of counsel, expenses of an intermediate and final accounting, and commissions due the receiver, which expenses were a prior and first lien upon the retained percentages due the receiver on the contract.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 205, 210, 219–222; Dec. Dig. § 128.*]

Proceeding by Chauncey S. Horton and others against the Thomas McNally Company, an insolvent corporation in receivership. On plaintiffs' motion to have certificate holders declared to have a prior and first lien upon certain moneys due to the receiver, heard at Rockland Special Term. Denied.

See also, 156 App. Div. 887, 140 N. Y. Supp. 1124.

Clifford Couch, of Peekskill, for plaintiff.

Zabriskie, Murray, Sage & Kerr, of New York City, for Merchants' Nat. Bank.

Hugh M. Hewson, of New York City, for Harriman Nat. Bank.

R. Percy Chittenden, Asst. Corp. Counsel, of New York City, for City of New York.

Thomas Gilleran, of New York City, for McNally Co.

Coombs & Wilson, of Brooklyn, for Georgia-Florida Lumber Co.

Franklin Couch, of Peekskill, and Samuel Strasbourger, of New York City, for receiver.

William Rasquin, Jr., of New York City, for Harrison K. Bird.

TOMPKINS, J. The property within this state of the Thomas McNally Company, an insolvent corporation, was taken possession of by this court upon the application of creditors of the defendant, and receivers were appointed to take over and preserve such property for the benefit of the creditors and others interested in the insolvent corporation. The property consisted mainly of a $4,000,000 contract with the city of New York for the completing of a section of the Catskill Aqueduct, and upon which contract defendant had defaulted, and under which it then owed large sums of money.

By agreement of all the parties who were before the court, the receivers were appointed, and undertook, for the preservation of the defendant's property and the protection of its creditors and to save a forfeiture of its contract with the city of New York, to carry on and complete the work under said contract. To do this it was found necessary to issue receivers' certificates aggregating the sum of $350,000 which, at the time, it was honestly believed would be sufficient to enable the receivers to complete the contract, the order for which certificates provided that the certificates should be a first lien on the retained percentages. Thereafter it was found that additional moneys would be necessary in order to finish the work and save the retained percentages on the work already done, and an order was made authorizing the receivers to withdraw from the city $100,000 of the said retained percentages. This was done because the need for money with which to continue the work and pay administration expenses was imperative.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Thereafter, and in September, 1913, the receiver made a petition to the court for additional funds, in order to preserve the property and complete the contract, and upon that application, on the 11th day of October, 1913, and with the consent of all who appeared at that time, including some of the certificate holders, an order was made authorizing the receiver to borrow an additional sum, not exceeding $25,000, for the purpose of completing the contract, which sum should be an expense of administration, and said order further provided:

"It is further provided that the action of Receiver B. B. Odell, Jr., in borrowing the sums of money, evidenced by existing notes set forth in the moving papers, be ratified and confirmed, and that the receiver be authorized to renew all existing notes as may be necessary, and that all the sums of money that have been realized, or that may hereafter be realized, from renewals of said notes, either in whole or in part, shall be an expense of administration to be hereafter accounted for."

That order was made upon the consent of all of the parties who appeared upon that motion, and the motion papers and the names of those who appeared, together with the memorandum of the court and the order, are made a part of the receiver's answer to the petition on this motion. The contract work has now, after about five years of earnest and conscientious endeavor on the part of the receivers, been completed, except for a little cleaning up that remains to be done, which will cost approximately $2,000.

There is now in the hands of the comptroller of the city of New York the sum of about $275,000, retained percentages, and a balance of about $13,500 of a monthly estimate, all of which the receiver will be entitled to upon the completion of the work and the final certificate by the engineer or board of water supply. Besides, the receiver has claims against the city for extra work and materials aggregating about $800,000, to prepare and support which claims the receiver has employed expert engineers and accountants, who now have claims against the receiver for their services to date. The receiver now owes to different banks the sum of about $118,000, borrowed under or ratified by the order of October 11, 1913, all of which moneys concededly were used to enable the receiver to complete the contract and were necessary for that purpose.

Besides, there are other claims outstanding against the receiver, incurred by him in the administration of his trust, and necessary for the completion of the contract, and the simple question upon this motion is whether the certificate holders have a prior and first lien upon the retained percentages in the hands of the comptroller of the city of New York, or whether these moneys, or so much thereof as may be necessary, are first liable for the payment of the administration expenses of the receivership.

My opinion is that the lien of the certificates on the moneys retained by the city and now due under the contract is subject to the payment of the cost of the administration expenses, including the necessary cost of financing the contract and completing the work, and the commissions of the receivers, if any additional are to be allowed, and the costs, fees, and expenses of counsel, which cannot be determined until the final account of the receiver, and the expenses of the second intermediate ac-

counting, which is now pending, as well as the expenses of a final account, which has yet to be made.

Unless the means had been furnished to the receiver with which to complete the contract, all rights and claims thereunder would have been forfeited to the city of New York, and there would have been no retained percentages, or other fund, for the payment of the certificate holders, or any one else, and it was understood by all of the parties who appeared on the motion of the receiver, which resulted in the order of October 11, 1913, and it was then agreed at a conference participated in by all, that the receiver must be afforded the means of completing the contract, in order to save the moneys that had already been earned thereunder.

These receivers were appointed by the court, and the defendant's property, including this contract, was taken into the court's possession, not as a matter of choice, or for the purpose of "voluntarily engaging in a business enterprise," as stated in one of the briefs submitted upon this motion, but of necessity and in performance of its duty, for the preservation of the property of a defunct corporation, and for the protection and benefit of all parties interested, and it seems to me that all expenditures necessary for the preservation of the property, including the contract with the city of New York, must be regarded as administration expenses, and that the completion of the contract was essential to its preservation and the protection of all interests. It was so regarded, a least, at the beginning of the receivership, and for a long time after, and was acquiesced in by all concerned, including purchasers of the certificates, who knew that the money paid by them for such certificates was to be used by the receiver in his efforts to complete the contract and prevent its forfeiture.

I find no case, on any of the briefs submitted in support of this motion, holding that necessary expenses and commissions of receivers are to be paid subsequent to receivers' certificates, or not paid at all, but find many cases in the state and federal courts holding to the contrary; and it is my conclusion that, even without the order of October 11, 1913, which was consented to by all parties, and that without notice to the certificate holders, the court would have power, if necessary for the preservation of the receivership property, to authorize the borrowing of money and make it a first charge on such property. Union Trust Co. v. Midland Railroad Co., 117 U. S. 434, 6 Sup. Ct. 809, 29 L. Ed. 963.

People who buy receivers' certificates do so with the knowledge that the receivership property and assets are subject in the first instance to the payment of administration expenses and receivers' commissions, etc., and that the certificates can only share in the fund that may be left after the payment of such expenses. In this case, all knew, or should have known, that there could be no retained percentages unless the receivers were afforded additional means from time to time, if necessary, to complete the contract, and thereby preserve as much as possible of the retained percentages.

At the beginning it was believed by all that the work under the contract could be done by the receivers at a profit that would pay all ex-

penses and realize something for the many creditors of the defendant, and it was so understood when the certificates were issued and sold, and the receivers have done their best to realize that expectation; but changes in the contract and extra work required by the city, and circumstances over which the receivers had no control and could not foresee, have left them in their present position, with the necessity of using a portion of the retained percentages to liquidate the obligations they assumed in order to complete the work and preserve what was left of the trust property, and to enable them to prepare and prosecute large claims against the city for extra work. All these possibilities the purchasers of certificates must be regarded as having assumed when they invested in these securities.

In the case of Pusey & Jones v. Pennsylvania Paper Mills (C. C.) 173 Fed. 634, the court said:

"The unpaid expenses of the receivership, which preceded the foreclosure, as settled by the receiver's accounts, amount to $8,264.25, the items of which there appear. These expenses are ordered to be paid by the foreclosure decree as a preferred matter, next after the costs of sale and of suit, but are nevertheless contested by the receiver's certificate holders, *on the ground that such certificates were made a first lien on the property, subject only to the rights of the mechanic's lien claimants.* * * * The court, having taken the property into its hands to administer by means of a receiver, may certainly provide for payment out of it of the costs of so managing and administering upon it, save only so far as this interferes with existing liens. It was by virtue of this that a loan of money on receiver's certificates was authorized, and the same power which entitled the court to order this and secure it by a lien on the property enables it also to take care of the expenses incurred outside of that, in the course of the receivership, which in this respect stand no differently and are of equal obligation. If without power to order the one, it was without power to order the other; *the contention of the receiver's certificates being self-destructive. It is said, however, that the court made the certificates a first lien on the property, and that, having contracted for this, it cannot afterwards let in anything to impair its own decree. But the court cannot bargain away its powers, if indeed it can be held to have done so.* It is not like the attempt to give priority * * * over vested or existing liens, with which, particularly in case of a private business corporation, it cannot, of course, interfere. By the order entered in the present instance, authorizing the issuing of $30,000 of receiver's certificates, to which the mortgage bondholders assented (the rights of mechanic's lien claimants, who did not, being saved), *the certificates were made a first lien on the property of the company, and according to this they will be now respected and enforced, but not to the prejudice of what it was found necessary to do in the interest of all parties concerned, including the certificate holders themselves, as called for by subsequent events. The court, in so pledging the property of the company, cannot be held to have tied its hands or stripped itself of authority to deal with it to this end. If that was not expressed in the order, it was implied.* As was said by Judge Jenkins in Anderson v. Condict, 93 Fed. 349, 353 [35 C. C. A. 335, 339]: 'It is not presumable that the court would divest itself of the power to pay the expenses of operation which it had assumed. That would be an act of felo de se.' *What, it may well be asked, would have become of the receiver's certificates, if it had so left them in the lurch? The priority given them by the order had relation to their standing with respect to other incumbrances, and was not with the idea of preferring them over administration expenses, subsequently incurred, which may therefore properly be first paid out of the proceeds of this sale, as provided in the foreclosure decree.*"

Smith on Receivers, page 588, says:

"The receiver is entitled to compensation in priority to receiver's certificates."

Kerr, on Receivers (6th Ed.) page 250, citing several cases, says:

"The payment of the costs, charges, and expenses, including his remuneration, of a receiver, is not dependent on the sufficiency of the estate to bear all the costs. He is entitled to be paid without regard to the sufficiency of the estate to meet the claims upon it. Thus a receiver appointed over the assets of the company is entitled to be paid next after payment of the costs of realization, *and even in priority to persons advancing money under an order of the court on the terms that repayment is to be made a first charge on the assets.*"

Many text-writers and many courts have said and held the same thing.

I think this motion should be denied, and that the receiver should be authorized to receive the moneys due from the city of New York, and deposit them under the order of the court in some bank or trust company where they will draw interest, and he should be authorized to pay therefrom the amounts that he was required to borrow for the completion of the contract and other administration expenses, and for such additional administration expenses as may be necessary to complete the contract, and perfect and collect the receivers' claims against the city for extra work, and that the balance should be held until the final accounting of the receiver.