HORTON et al. v. THOMAS McNALLY CO.

In re MERCHANTS' NAT. BANK et al.

(Supreme Court, Appellate Division, Second Department.  May 14, 1915.)

RECEIVERS ⚖128—RECEIVER'S CERTIFICATE—CLAIMS AGAINST RECEIVER.

> Where the receiver of an insolvent corporation, whose property consisted mainly of a contract with the city of New York, under order of court, and to save forfeiture of the contract, undertook performance, receiver's certificates, given for money borrowed to carry out the contract and expressly made first and second liens on the contractor's plant, and money retained by the city of New York, are not inferior to claims for administrative expenses and for sums thereafter borrowed by the receiver to complete the work.
>
> [Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 205, 210, 219–222;  Dec. Dig. ⚖128.]

Appeal from Special Term, Westchester County.

Argued before JENKS, P. J., and CARR, RICH, and PUTNAM, JJ.

George Zabriskie, of New York City, for appellant Merchants' Nat. Bank.

Franklin Couch, of Peekskill, for receiver respondent.

· PER CURIAM.  On April 10, 1907, the Thomas McNally Company, a Pennsylvania corporation, contracted with the city of New York to build a portion of the Peekskill division of the Catskill Aqueduct.  This extensive undertaking involved large outlays for an aggregate compensation to the contractor of $4,000,000, quite disproportionate to the contractor's capital, which was but $200,000.  After the work had proceeded during the years 1907 and 1908, the contractor became insolvent, having about $500,000 obligations outstanding.  On a complaint by local creditors, alleging that the uncompleted contract was a valuable asset, which, if prosecuted to completion, would undoubtedly

---

⚖For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

result in profit, the Supreme Court at Special Term, in March, 1909, appointed receivers of all defendant's property within the state, including this aqueduct contract. This work the receivers were authorized to complete, such leave apparently having been granted at the request of all interests. Under this construction contract, the city holds back, pending final performance, 10 per cent. of the estimated monthly amounts earned, called "retained percentages."

On June 29, 1909, the receivers applied to the Special Term for leave to issue receivers' certificates. Outstanding obligations of about $80,000 were set forth, including these secured by attachment. Leave was given to issue receivers' interest-bearing certificates, not exceeding $150,000, payable at the completion of the contract or sooner. The order declared such certificates a first lien on the plant, with all buildings, engines, and tools, also a first lien on one-half of the money retained or to be retained by the city of New York under its contract. Each of the certificates (which are called the first issue) recites:

"This certificate, as provided by said order, is a first lien upon the plant of the Thomas McNally Company, in the counties of Westchester and Putnam, state of New York, now in the possession of the receivers. It is also a first lien upon 50 per cent. of the amount of money retained by the city of New York under said contract No. 2, until the completion of the said contract, for the faithful performance thereof."

On May 27, 1911, the receivers petitioned for leave again to issue certificates not exceeding $200,000. This petition set forth various properties, and remedies which the McNally Company had against its subcontractors, and the expenditures necessarily required. The court directed such issue to bear date June 1, 1911, to be designated "Receivers' Certificates, Second Issue." It declared such certificates to be a lien, first, on all retained moneys by the city, now aggregating $200,-000, and estimated that such amounts would be $400,000; second, on all the property of the McNally Company, with right to the receivers to sell such goods and chattels for cash, but directed the deposit of the money received therefor in a trust company in a separate account, known as "Receivers' Certificates Account"; also, third, on the moneys to be received from the surety company upon the bond of a subcontractor, which moneys, when received, were also to be deposited in such "Receivers' Certificates Account." These certificates of second issue were, however, to be secondary and subordinate to the certificates of first issue of July 1, 1909. Such certificates were thereupon issued in form corresponding to this order.

These two issues proved inadequate. The receivers, in June, 1912, obtained an ex parte order allowing them to be paid by the city $100,-000 of the retained percentages, to be used to carry out and complete the contract. The receivers also resorted to loans upon notes. In September, 1913, Mr. Odell, one of the receivers, set forth the moneys he had thus obtained, and asked for authority to make further borrowings. He asked to be allowed to sell further parts of the McNally plant, which were no longer required. In the affidavit of October 7, 1913, the receiver stated that from November 7, 1912, up to that time, the receivers had borrowed on notes, $835,526.15, of which $111,700

was then outstanding; that the interest on the receivers' certificates due in December, 1912, and January and July, 1913, aggregating $20,-000, had been met and paid, not through the receipts from the city, but from borrowing on the receivers' notes. The court thereupon ratified the receivers' borrowings, and authorized them to borrow in addition $25,000, such sum to be "an expense of administration." All objections and questions of the priority under receivers' certificates were expressly reserved until the receivers' final accounting, or until the further order of the court.

Thus the receivers had put out two issues of certificates aggregating $350,000, with notes for $111,700, but which certain offset items reduced to $28,000, making $53,000 in notes, an aggregate net indebtedness of over $400,000. In December, 1914, a petition was filed by the Merchants' National Bank, as a holder of $50,000 of the receivers' certificates, *second* issue, acquired about November 1, 1911, at their full par value, and as pledgee of $30,000 certificates of the *first* issue. Its moving papers averred that the city had retained $385,000 as percentages under its contract, but that, without the petitioner's knowledge, an order had let the city already pay about $135,000, leaving $250,000 still in the city's hands. The petition also set forth that the receiver had sold parts of the plant for about $15,000, and pointed out the risks and impairment of security of the certificate holders. It moved, also, on behalf of other certificate holders, who should elect to come in. The petition prayed that the receiver be directed to collect the funds due under the contract from the city, and to apply same to the redemption of these certificates; also to apply the $15,000 already realized from the sale of the plant by the receivers, and for other relief.

The receivers' answer set up that the city was already enjoined from paying the retained percentages by order of December, 1914, and then detailed various expenses of administration, also liabilities for blasting damage, and other obligations. The court at Special Term made an order directing the receiver to deposit the moneys due and to become due from the city of New York in some bank or trust company, from which he should pay the sums borrowed to complete the contract, other expenses of completion and administration expenses in the completion of said contract, and those incurred in order to perfect the claims against the city for extra work, and that the other moneys be held until final accounting, or the further order of the court.

Petitioner appealed from this order, and urges that the leave given the receivers for subsequent borrowings did not, and could not rightfully, displace the lien of the certificate holders, especially as it expressly authorized the receivers to borrow on the security of "assignment of estimate or estimates for work done," so that all lenders necessarily took such security with knowledge of the prior liens placed thereon by orders of the court in favor of the receivers' certificates. Certainly the court cannot ignore this security, which it authorized to be stated on the face of the certificates. Had the subject-matter to be judicially administered been a railroad or public service corporation, the necessity to maintain its continued service might be invoked

to authorize later charges which, in special circumstances, may displace earlier liens. But this contract was that of a private contractor. Pressing liens and claims under attachment threatened to cause such an interruption of the business as would expose the contract to forfeiture. On this appeal it cannot be held that the later outlays have a clear priority, to be advanced above the rights of the certificates. The lien promised by the court's order is not lightly to be withdrawn. The proceeds of these certificates preserved the contractor's rights, apparently equally with the later outlays. The equities from moneys advanced show both classes of creditors equal in degree, and therefore of equal right. The ultimate priorities cannot now be determined. In the final disposition of the corporate property, we assume that the court will take into account and give due weight to all enforceable equities existing between all persons before it upon such distribution, including such equities, if any, as may arise after the disposition of this appeal, or which may exist by reason of possible further proceedings upon claims due to the receiver.

In order, however, to protect all interests as far as possible before such final distribution, the order appealed from should be modified, so as to direct the receiver to hold and deposit all moneys received from the city of New York, or from others, and that he pay out therefrom only moneys necessary to complete the aqueduct contract, also to perfect claims for additional services against the city, and to carry on pending litigations, and such further suits as may be authorized. Upon final adjustment of any additional demands for services against the city, and after what may be reasonably allowed as receiver's charges and for legal outlays, that the outstanding receivers' certificates and unpaid notes given by the receiver be treated as of equal and co-ordinate ranking in distribution, except so far as special enforceable equities in favor of any such receivers' security or obligations may then be made to appear. As thus modified, the order is affirmed, without costs.

The parties hereto having stipulated in open court that this case may be disposed of by a court of four, the decision is as follows: Order modified, in accordance with opinion per curiam, and, as so modified, affirmed, without costs.

