### ANDERSON v. CONDICT et al.

(Circuit Court of Appeals, Seventh Circuit. April 11, 1899.)

#### No. 538.

1. RAILROAD FORECLOSURE—FILING CLAIMS—NOTICE.

Where a decree on foreclosure of a railroad mortgage provided for filing all claims within a time specified, but did not provide for publication or notice of its requirement, is the provision binding upon claimants without notice, quære?

2. SAME—DECREE—EFFECT ON PURCHASER.

A decree confirming a foreclosure sale of a railroad required notice to be published that all claims against the property superior to those decreed

to be paid from the proceeds of the sale, and all claims against the receiver, should be filed within 60 days from its publication. *Held*, that the purchasers were bound by such decree.

**8. SAME—LACHES OF CLAIMANT.**

Where a decree confirming a foreclosure sale of a railroad provides for filing of claims before the master, and a party having a claim files the same, he becomes so far a party to the suit that he is bound to diligence necessary to protect his claim; and, where he fails to bring such claim to the notice of the court, he is without remedy, after decree and distribution, unless his claim was one which by the decree was imposed upon, and subject to which the purchasers acquired title to, the property.

**4. SAME—RECEIVER'S CERTIFICATES—COSTS OF ADMINISTRATION.**

Certificates of a receiver of a railroad were made a first lien on the property and its proceeds, and on all net income derived from its operation, "after the payment of expenses and costs of administration." *Held*, that a claim for personal injuries happening during the operation of the road by the receiver was an expense incurred in, and by reason of, the operation of the road, and should be charged upon the corpus of the property, failing income sufficient to pay it.

Appeal from the Circuit Court of the United States for the Northern District of Illinois.

In January, 1897, Stephen D. Bayer filed his creditors' bill in the court below against the Englewood & Chicago Electric Street Railway Company to enforce payment of a certain judgment by him recovered against that company. Subsequently a suit was brought for the foreclosure of a mortgage given upon the railway to secure certain bonds. The two causes were consolidated, and G. H. Condict was appointed receiver, and empowered to continue the operation of the railroad, and to conduct its business in the usual manner. On February 25, 1897, the court authorized the issuance of two series of receiver's certificates,—one, designated "Series A," amounting to $60,000, which certificates upon their face recited, as was provided by the order, that they "are made a first and prior lien upon all property, assets, effects, and franchises of said the Englewood & Chicago Electric Street Railway Company, and the proceeds thereof, which now or may hereafter come into the possession, custody, or control of said receiver, and upon all net income derived from the operation of said railway, after the payment of operating expenses and costs of administration, superior to the lien of the bonds and trust deed mentioned in said order; superior, also, to all of the claims or liens now existing, or which may be hereafter created, against said property, or any part thereof; and all of said property and said income is pledged for the payment of said certificates of this series A, according to the terms thereof." The other series of certificates was designated "Series B," and certificates were authorized to be issued to an amount not exceeding $265,000. These certificates, as was provided by the order, contained the like recitals, excepting that they were subject to the superior lien of the certificates of series A. There was issued of these certificates the full amount of series A, and $247,439.73 of series B. On July 27, 1897, a decree was entered in the consolidated cause determining the amount due upon the bonds and coupons to be $1,265,502.97; adjudging that the lien of the bonds was subject to the costs of the suit, to the costs and charges of the administration of the estate in the hands of the receiver, and to the receiver's certificates, and subject to certain specified claims (which do not include the claim in controversy), the question of the priority of which was reserved; directing a sale by the master, and that the proceeds be first applied to the expenses of the sale and the costs of the suit, including all charges, compensation, allowances, and disbursements of the receiver and his solicitor and counsel, then to the payment of the receiver's certificates, next to the payment of the bonds, next to the payment of the judgment of Bayer, next to the claims against the company which had been allowed. The twenty-eighth paragraph of the decree provides as follows: "And the purchaser or purchasers, and his or their successors and assigns, shall be entitled to have and hold the premises and property so sold free and discharged from the lien or in-

cumbrance of the mortgage foreclosed in this cause, and from the claim of all other parties to this cause, and those claiming under them, save only as herein expressly reserved, and subject only to such claims and allowances as shall be adjudged by this court to be prior in lien or superior in equity to the receiver's certificates hereinabove mentioned, and the mortgage foreclosed in this cause, and which shall be adjudged to be paid out of the property so sold, or any part thereof, and which the purchaser or purchasers may be required to pay by the order of this court, and also subject to all current liabilities of the receiver incurred, or obligations assumed or imposed upon him by order of this court, which may hereafter be adjudged and decreed herein to be superior in equity to the mortgage foreclosed in this cause and said receiver's certificates." The thirty-first paragraph of the decree reads as follows: "It is further ordered, adjudged, and decreed that all persons or corporations having or claiming any right against said receiver or against said property superior to any of the liens or claims herein provided to be paid from proceeds of said sale as aforesaid shall, within ninety days from the entry of this decree, file with Henry W. Bishop, master in chancery, a statement of said claim or claims, * * * and that any person or persons having any such claim or claims who shall fail to file the same as aforesaid shall not be allowed payment or recourse against the property herein decreed to be sold, or against the estate in the hands of the receiver, or the proceeds of said sale, and that the purchaser or purchasers at such sale shall purchase such property subject to the payment only of the amount allowed upon such of said claims so filed within said ninety days as shall be found entitled to priority over the lien of the trust deed herein foreclosed, and which the court may further find should be paid by said purchaser or purchasers."

On October 12, 1897, the property was sold by the master, and purchased by the appellees Heidelbach, Shipley, Bach, and Rice, for the sum of $260,000, $25,000 of which was paid in cash, as required by the decree, and the balance in receiver's certificates, series A and series B, as permitted by the decree. On November 10, 1897, the report of the master was confirmed, and the sale made absolute, "subject, however, to all and singular the terms of purchase as recited in said decree of July 27, 1897, which terms and conditions are by reference thereto hereby incorporated in this decree, with the same force and effect as if they were herein set forth at length." The decree of confirmation contains, also, these provisions: "And the court expressly reserves and retains jurisdiction of this cause, and power to enforce all the provisions of said decree of July 27, 1897, and of this decree, including the right to retake and resell said railroad properties in case said purchasers shall fail to comply with any order of this court made in respect to the payment of any indebtedness, obligation, or liability required by them to be made, or in respect of any of the other terms or conditions of the said decree, or of this decree, within thirty days after the entry of such order." "It is further ordered that said master in chancery shall publish in one newspaper of general circulation published in Chicago, Illinois, once a week for four successive weeks, a notice that all claims against the said property mentioned in said decree of July 27, 1897, which are, or are alleged to be, superior to the liens or claims provided in and by said decree to be paid from the proceeds of the said sale, and all persons having or claiming to have any claims against said G. Herbert Condict, as receiver herein, shall within sixty days from the date of first publication of such notice, to be therein stated, file with Henry W. Bishop, Esq., master in chancery, a statement of said claim or claims, wherein there shall be set out the nature of said claim or claims, and the priority or priorities which are asserted in respect thereto." The notice published limited the time for filing claims to sixty days from February 26, 1898, the date of the first publication. On January 17, 1898, the court directed the payment of the costs of the suit and the solicitor's and master's fees, consuming all of the $25,000 paid in cash by the purchasers, which payments were made on or before January 20, 1898. On April 1, 1898, an order was made directing the issuance of a deed to the purchaser, and the delivery of possession thereunder by the receiver; and it appearing to the court that from the 21st day of January, 1898, the income of the property in the hands of the receiver was insufficient to pay the expenses incurred by him, and that there was a deficit of $4,304.77 in the operation and

maintenance of the property, and that the receiver had no further funds or assets to pay such deficiency, it was ordered that the purchasers, as a condition of the delivery to them by the receiver of the possession of the property, should assume and agree to discharge such deficiency arising from the business as aforesaid, and the purchasers thereupon, in open court, assumed to pay such deficiency; and the court expressly reserved jurisdiction of all parties to the consolidated cause, and of all matters and things not thereby disposed of, until the final disposition of all matters and things not disposed of. On the 29th of December, 1897, the appellant, Johannes Anderson, the administrator of the estate of Axel Alrich Anderson, deceased, pursuant to the decrees of the 27th of July, 1897, and of November 19, 1897, filed with the master a claim against the receiver for the death of his intestate by reason of the alleged negligence of the receiver's servants in the operation of the railway. This claim appears to have remained with the master unnoticed, and without action thereon. Subsequently, on the 23d of April, 1898, and within the time allowed by the decree of November 19, 1897, he filed a further claim, to which, on June 6, 1898, objections were filed by the receiver and by the purchasers at the sale. On July 19, 1898, the petitioner, Anderson, moved the court for a reference to a master to hear the claim. The court overruled the application, and, on motion of the objectors (appellees here), dismissed the claim at the cost of the petitioner, and entered judgment thereon, which order or decree is brought here for review.

A. H. Gross, for appellant.

Charles L. Horton, for appellees.

Before WOODS, JENKINS, and GROSSCUP, Circuit Judges.

JENKINS, Circuit Judge, upon this statement of the case, delivered the opinion of the court.

If, as was said at the bar, the decision under review proceeded upon the ground that the petition of the appellant was not timely filed, the holding was erroneous. The time limited by the decree of July 27, 1897, for the filing of claims had, indeed, expired before the filing of the appellant's claim. That decree, however, did not provide for publication or notice of its requirement, and the omission was manifestly inadvertent. It is not to be presumed that the court designed, if it had the power, to cut off remedy without notice. This omission is supplied in the decree confirming the sale, which required notice to be published that all claims against the property alleged to be superior to those decreed to be paid from the proceeds of sale, and all claims against the receiver, should be filed within 60 days from the date of the publication of such notice. By that decree the purchasers are bound. Olcott v. Headrick, 141 U. S. 543, 12 Sup. Ct. 81. The claims of the petitioner (appellant)—both the one filed December 27, 1897, and the one filed April 23, 1898—were so filed within the time limited; notice being first published February 26, 1898. It was therefore erroneous to dismiss this petition upon the ground stated.

The claim of the appellant, as first filed, would seem to have been overlooked; for on January 17, 1898, the court directed distribution of the proceeds of sale, without making provision with respect to that claim, and those proceeds were accordingly distributed among the parties adjudged entitled thereto. However improvident that decree, if there remains no fund or property within the control of the court out of which the claim of the appellant, if

and when established, could be satisfied, it would be useless to reinstate the claim or to determine its merits. The appellant is not without fault. By filing his claim, he became so far a party to the suit that he was bound to active vigilance with respect to all things necessary to protect his claim. It was his duty to see that the fund then in court was not diverted from its legitimate purpose or improperly distributed. Failing therein, whether through ignorance or negligence, he is bound by acts done under authority of the decree of the court. The appellant is therefore without remedy, unless his claim is one which by the decrees was imposed upon, and subject to which the purchasers acquired title to, the property.

It is urged that the receiver's certificates take priority over a claim for personal injury subsequently incurred under the receivership. The certificates, by the order authorizing their issue, and upon their face, are made a first and prior lien upon the property and its proceeds, and upon all net income derived from the operation of the railway, "after the payment of operating expenses and costs of administration." The holders of these certificates took them with the knowledge that the railway was in control of and under the operation of the court, through its receiver. It was contemplated that, until sale and delivery of possession thereunder, such operation should continue. Such operation might result in profit or in loss. The expense of operation should primarily be paid out of the income derived from the operation of the railway; but if, as here, there be no such income, that cost may properly be allowed priority out of the corpus of the property. Union Trust Co. v. Illinois Midland Ry. Co., 117 U. S. 434, 6 Sup. Ct. 809. This is the plain meaning of the language employed in the order authorizing the certificates. The expression in the order and the certificates, "after the payment of operating expenses and costs of administration," must be referred to, and limits, the lien declared upon the corpus of the property, and cannot be referred to income; for the term employed in the order is "net income," and the expression quoted, applied to net income, would be meaningless. It is not presumable that the court would devest itself of the power to pay the expense of operation which it had assumed. That would be an act of felo de se. It granted to the certificates a lien paramount to that of the trust deed, subject, however, to the payment of operating expenses and costs of administration; and this, we think, comprehends all liability incurred in the operation of the railway.

But it is said that claims for personal injuries happening during the operation of the road by a receiver cannot be allowed, as a cost of administration, in priority to the receiver's certificates; and this in analogy to the doctrine that claims for personal injuries accruing prior to foreclosure are denied priority to the lien of the trust deed, under the six-months rule. We cannot sustain this contention. The one rests upon an entirely different principle from the other. Union Trust Co. v. Illinois Midland Ry. Co., supra. In the one case the arbitrary displacement of the lien of the mortgage or

trust deed by a certain character of expense of operation is allowed during a certain arbitrary period after default in payment of interest or principal of the mortgage, and before suit to foreclose, and while the mortgagor is in possession, because the railway must be kept a going concern, and damages for personal injury arising during such period of operation are not of the character of cost essential to the operation; but if the mortgagee were in possession, operating the railway, none would doubt liability for personal injuries. Here, at the request of the trustee, the court assumed, and, with the knowledge and acquiescence of the holders of the receiver's certificates, continued, the operation of the railway. They subjected their securities to the expense of operation, —the trustee, by its affirmative act in praying the court to take possession and operate the railway; the holders of the certificates, by the provision of the order authorizing the issuance of the certificates, and which was expressed upon their face, making them subject to the payment of operating expenses and the cost of administration. For that purpose, and to that extent, these parties were vicariously in the possession and operation of the railway through the court as their representative. All liabilities of the receiver were imposed upon the corpus of the property, failing income, as certainly as a mortgagee would be personally liable if he possessed and operated the railway. Technically, perhaps, payment for personal injury cannot correctly be denominated cost of operation; but it is an expense incurred in and by reason of the operation, and as such should be allowed in the accounts of the receiver. Klein v. Jewett, 26 N. J. Eq. 474. That such was the meaning of these decrees seems to us incontestable. Possibly, in the wording of the decrees, there is lacking that precision of statement desirable in documents of such importance. For example, in the twenty-eighth paragraph it is said that the purchaser should take over the property subject to claims superior in equity to the receiver's certificates and the mortgage, and also subject to all current liabilities of the receiver incurred, or obligations assumed or imposed by the order of the court, which should thereafter be adjudged to be superior in equity to the mortgage and said receiver's certificates. By the thirty-first paragraph the purchaser takes subject to claims which shall be found entitled to priority over the lien of the trust deed, omitting reference to the receiver's certificates. But, taken as a whole, we think these decrees are sufficiently explicit. The decree of sale provides that the proceeds of sale should be applied—First, to the payment of the costs and compensation of certain officers, and to the "costs and charges of the administration of the estate in the hands of the receiver herein, including all charges, compensation, allowances, and disbursements of the receiver and his solicitors and counsel"; second, to the payment of the principal and interest of the receiver's certificates, series A; and, third, to the payment of the principal and interest of the receiver's certificates, series B. Thus, by the very terms of the decree of sale, the expense of the receiver in the administration of the estate was to be paid in priority to the receiver's certifi-

cates; thereby adjudging that such expense was superior in equity. The decree of confirmation provided for the publication of the notice to file claims against the property which are alleged to be superior to the liens or claims provided by the decree to be paid from the proceeds of the sale, and also for all claims against the receiver, thus distinguishing the two classes; and that distinction is recognized in the notice which was approved by the court. It is doubtless true that it was supposed at the time of the decree that the $25,000 required to be paid in cash upon the sale would be sufficient to discharge the liabilities having priority over the receiver's certificates. It is not, however, to be supposed, nor does the language of the decree imply, that the court limited the amount of claims which should be paid prior to the receiver's certificates to that sum. It was a mere deposit required by the court, that such claims might be presently discharged. The provision was in the interest and for the convenience of the holders of the receiver's certificates, who, it was supposed, might become the purchasers, and were allowed to pay their bid, except as to the sum stated, in the receiver's certificates; but this was subject to the power reserved to retake and resell the property, if the purchaser should fail to discharge the demands which the court should determine were entitled to priority. Otherwise, the action of the court in distributing this fund of $25,000 prior to any publication of the notice to file claims would be wholly indefensible. It is clear that that fund was so distributed because the court still held control of the property to satisfy all lawful claims against the receiver; and this conclusion is fortified by the fact that in the distribution of that fund no provision is made for the payment of the receiver's compensation, or for any expense incurred in the management of the road; and, by a subsequent decree authorizing the issuing of the deed, it was made an express condition of delivery of possession of the property that the purchaser assumed, and agreed to discharge, the stated deficiency arising from the operation of the road to meet obligations incurred by the receiver. We are therefore of opinion that the appellee's claim, if established, should be charged upon the corpus of the property, and adjudged superior to the right of the purchasers. The decree is reversed, and the cause remanded, with directions to the circuit court to proceed to hear and determine the claim in question, and for further proceedings conformable to this opinion.