In the Matter of Harold LASKIN, Bankrupt.

Harold Laskin, Appellant,

Industrial Rayon Corporation, Appellee.

No. 14076.

United States Court of Appeals Third Circuit.

Argued Dec. 13, 1962.

Decided April 5, 1963.

Rehearing Denied May 6, 1963.

Charles C. Hileman, III, Philadelphia, Pa. (Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., on the brief), for appellee Industrial Rayon Corporation.

Before KALODNER and FORMAN, Circuit Judges, and ROSENBERG, District Judge.

KALODNER, Circuit Judge.

Harold Laskin, the appellant, filed a voluntary petition in bankruptcy on August 4, 1960, listing unsecured claims of $61,030.93 and declaring that he had no assets. Among the scheduled claims was that of the appellee, Industrial Rayon Corporation ("Industrial") in the amount of $10,284.33. Industrial subsequently filed a Proof of Claim in the amount of $12,803.99 to which was attached a negotiable promissory note dated March 31, 1959, in the amount of $15,-426.50, payable with interest at 6% in sixty days.

On November 29, 1960, following a 21–A examination of the bankrupt on November 23, 1960, Industrial filed Specification of Objections to Discharge asserting that the bankrupt had (1) knowingly and fraudulently concealed assets belonging to the bankrupt estate from the trustee ,and creditors; (2) falsified books of accounts and records; and (3) transferred property within one year preceding the filing of his bankruptcy petition with intent to hinder, delay or defraud his creditors. On December 1, 1960 the bankrupt filed Exception to the Specification of Objections on the ground that Industrial was not a creditor of the estate and thus was not qualified to be heard in opposition to the bankrupt's discharge.

On June 8, 1961, at an adjourned meeting on Industrial's Objections, the bankrupt asked, and was granted, (1) leave to amend his Schedule A–3 to delete Industrial as a listed creditor; and (2) to file objections to Industrial's Proof of Claim. At the close of the June 8th hearing, which was limited to the issue as to Industrial's status as a creditor, the Referee granted the bankrupt's application

Sidney Schulman, Philadelphia, Pa. (Herman N. Silver, Philadelphia, Pa., on the brief), for appellant.

to amend his Schedule A–3 so as to delete Industrial as a creditor and sustained the bankrupt's objections to Industrial's Proof of Claim and his exceptions to Industrial's Objections to Discharge. In each instance the Referee's action was grounded on his view that Industrial was not a creditor of the bankrupt by virtue of his signing of the March 31, 1959 promissory note, subsequently to be discussed in detail. On August 11, 1961 the Referee filed Orders giving effect to the rulings above stated and granting the bankrupt his discharge.

Industrial petitioned for Review of the Referee's Orders and following hearing thereon the District Court on April 17, 1962 entered its Order vacating all of the Referee's Orders. This appeal followed.

It must immediately be stated that the District Court, as evidenced by its Opinion, reported at 204 F.Supp. 106 (E.D.Pa. 1962), directed its attention only to the issue as to whether Industrial did or did not enjoy the status of a creditor by virtue of the March 31, 1959 note and the parties have likewise done so on this appeal.

The note in controversy reads as follows:

"$15,426.50          March 31, 1959.
    "Sixty days ——— after date
——— promise to pay to the order of INDUSTRIAL RAYON CORPORATION ——— Fifteen Thousand Four Hundred Twenty-six and 50/100 Dollars Payable at Cleveland, Ohio with interest at 6% per annum Value Received
    "Laskin Bros. of Phila. Inc.
        "Harold Laskin
"No. K–71730 Due May 30, 1959"

The names "Laskin Bros. of Phila. Inc." and "Harold Laskin" were in the bankrupt's handwriting—the other portions of the note were printed and typewritten.

At the time the bankrupt was president of Laskin Brothers of Philadelphia, Inc.

The District Court held that under the provisions of Section 3–403(2) of the Uniform Commercial Code, as enacted by Pennsylvania,[1] which prevailed when the note was executed, the bankrupt became individually liable on the note when he signed it after writing in the firm name without any indication that his name was affixed in a representative capacity, and that evidence outside the note was not admissible to show that the bankrupt was not personally liable.

It was for that reason that the District Court held that the Referee had erred in going beyond the contents of the note itself in determining whether or not the bankrupt had become personally liable when he signed it without indicating that his signature was in his capacity as president of Laskin Brothers of Philadelphia, Inc. ("Laskin, Inc.").

The record of the proceedings before the Referee evidences that he was of the view that the Bankruptcy Act and not the Uniform Commercial Code controlled and that under the Bankruptcy Act he was empowered to go beyond the borders of the note to ascertain the capacity in which the bankrupt signed it.

We are of the opinion that the Referee was correct in this respect and for reasons which will subsequently appear we hold that he properly held that the bankrupt's signature on the note did not result in the creation of a debtor-creditor status between the bankrupt and Industrial.

■ One of the primary purposes of the Bankruptcy Act is the equitable distribution of the bankrupt's estate among its creditors.

---

1. The Pennsylvania Uniform Commercial Code of April 6, 1953, P.L. 3, § 3–403; 12A P.S. § 3–403(2).

The 1959 amendment to the Code, Act of October 2, 1959, P.L. 1023, § 3; 12A P.S. pkt. § 3–403(2) (3) did not become effective until January 1, 1960.

These principles are well-settled:

" * * * [C]ourts of bankruptcy are essentially courts of equity, and their proceedings inherently proceedings in equity." [2]

The bankruptcy court in passing on claims "sits as a court of equity", and "In the exercise of its equitable jurisdiction the bankruptcy court *has the power to sift the circumstances surrounding any claim* to see that injustice or unfairness is not done in the administration of the bankrupt estate." [3] (emphasis supplied)

To the foregoing must be added the specific provision of Section 57, sub. k of the Bankruptcy Act that "Claims which have been allowed may be reconsidered for cause and reallowed or rejected in whole or in part *according to the equities of the case,* before * * * the estate has been closed." (emphasis supplied)

Applying the principles stated it is clear that the Referee properly sifted the circumstances attending the execution of the March 31, 1959 note in the exercise of the equitable jurisdiction vested in him, and that his fact-finding that it was the intention of Industrial and the bankrupt to make only Laskin, Inc. liable on the obligation is amply supported by the evidence.

On this score it must be stated parenthetically that the District Court did not consider the question as to whether the evidence supported the Referee's fact-finding and that it premised its reversal of his Order with respect to it only on its view that the Referee was precluded by Pennsylvania law from considering anything but the note itself.

These facts are undisputed:

On March 31, 1959 Laskin, Inc. was indebted to Industrial in the amount of $15,246.50 for merchandise. On the same date Industrial sent the following letter:

"Mr. Harold Laskin, President
Laskin Bros. of Philadelphia, Inc.
Philadelphia 7, Pennsylvania
"Dear Mr. Laskin:

"Thank you for your call on March 20, 1959 and your check for $1,678.93 received on March 25, 1959 which cleaned up the balance owing for January and February and leaves open our November 25, 1958 invoice for $15,426.50. In reviewing correspondence with you, I find that we extended an extra 30 days dating on this invoice, which would have meant it was due for payment on January 25, 1959 and on this basis it is now approximately 60 days past due.

"I well understand the problems which you mentioned to me when we talked together and I trust that they will shortly resolve themselves to enable you to pay our invoice in full. I am enclosing a 60-day promissory note bearing interest at 6% per annum from January 25, 1959 which I will appreciate your signing and returning by return mail. Should you be able to pay our invoice in full by the end of April 1959, we will waive the interest charges.

"In any event, please sign and promptly return the note to me and rest assured of our sincere desire to be of help to you.

"Very truly yours,
"Industrial Rayon Corporation
"L. H. Needham, Jr.
"L. H. Needham, Jr.
Credit Manager"

On April 17, 1959 Industrial sent the following letter:

"Mr. Harold Laskin, President
"Laskin Bros. of Philadephia, Inc.
"232 North 11th Street
"Philadelphia 7, Pennsylvania

2. Local Loan Co. v. Hunt, 292 U.S. 234, 240, 54 S.Ct. 695, 697, 78 L.Ed. 1230 (1934).

3. Pepper v. Litton, 308 U.S. 295, 307–308, 60 S.Ct. 238, 245–246, 84 L.Ed. 281 (1939).

"Dear Mr. Laskin:

"Congratulations and Best Wishes on your recent membership in the New York Credit and Financial Management Association. I am certain that you will find your time and money well spent with this credit and financial group. Industrial Rayon has held membership with them for many years now and the many services performed by this group have been most helpful.

"Thank you for your letter of April 7, 1959 in which you enclosed the signed promissory note I had mailed to you on March 31, 1959. I have no doubt of your intentions to clear the balance as quickly as possible. In this connection, I should like to suggest that you send a check for as large an amount as possible as often as your cash position will permit. This method should ease the burden of making one large payment as well as provide the additional benefit of interest savings to you.

"Again my very Best Wishes to you and your new membership in the largest local Credit and Financial Association in the world.

"Very truly yours,

"Industrial Rayon Corporation
"L. H. Needham, Jr.
"L. H. Needham, Jr.
"Credit Manager"

The note was unpaid when Laskin, Inc., on November 17, 1959, more than seven months after its execution, filed a petition for an arrangement under Chapter XI of the Bankruptcy Act and scheduled it as a claim of Industrial.[4] Under the arrangements subsequently consummated Industrial received a payment of $2,-622.51, reducing the amount due on the note to $12,803.99.

The Referee based his fact-finding that the bankrupt had signed the note only as president of Laskin, Inc. and not as a co-maker or guarantor on the fact that the letter of March 31, 1959 transmitting the note for signature was addressed to the bankrupt as president of Laskin, Inc.; that the contents of the letter made it clear that the note was to be the obligation of Laskin only and that Industrial looked to Laskin, Inc. for its payment; and that Industrial's letter of April 17, 1959 acknowledging receipt of the signed note further evidenced that the transaction was solely between Industrial and Laskin, Inc.

As was earlier said, the District Court reversed on the ground that under the then prevailing provisions of the Pennsylvania Uniform Commercial Code[5] "evidence outside of the note is not admissible to show that Laskin [the appellant bankrupt] was not liable personally on the note * * *." 204 F.Supp. 106, 108.

█  The District Court erred in its view that the Pennsylvania law estopped the Referee from looking to all the circumstances attending the presentation and execution of the note in the exercise of the equitable jurisdiction vested in him as a bankruptcy court, and his specific authority under Section 57, sub. k of the Bankruptcy Act to reject claims already allowed "according to the equities of the case."

In Vanston Bondholders Protective Committee v. Green et al., 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162 (1946), it was held that in determining whether a claim was allowable the Bankruptcy Court was not bound to apply state law.

In doing so the Court stated (pp. 162–163, 67 S.Ct. pp. 239–240, 91 L.Ed. 162):

"In determining what claims are allowable and how a debtor's assets shall be distributed, a bankruptcy court does not apply the law of the state where it sits. Erie R. R. v.

---

4. In re Laskin Brothers of Philadelphia, Inc., D.C.E.D.Pa., Bankruptcy No. 26052.

5. The Pennsylvania Uniform Commercial Code was amended in 1959, Act of October 2, 1959, 12A pkt. pt., effective January 1, 1960, to permit parol evidence. P.L. 1023, § 3.

Tompkins, 304 U.S. 64 [58 S.Ct. 817, 82 L.Ed. 1188], has no such implication. That case decided that a federal district court acquiring jurisdiction because of diversity of citizenship should adjudicate controversies as if it were only another state court. See Holmberg v. Armbrecht, 327 U.S. 392 [66 S.Ct. 582, 90 L.Ed. 743]. *But bankruptcy courts must administer and enforce the Bankruptcy Act as interpreted by this Court in accordance with authority granted by Congress to determine how and what claims shall be allowed under equitable principles."* (emphasis supplied)

To the same effect see Heiser v. Woodruff, 327 U.S. 726, 732, 66 S.Ct. 853, 90 L.Ed. 970 (1946).

In Prudence Realization Corp. v. Geist, Trustee, 316 U.S. 89, 62 S.Ct. 978, 86 L.Ed. 1293 (1942) where a state rule established legal consequences to a written undertaking on the ground of "presumed intention" (just as the Pennsylvania statute here involved did) it was held that a bankruptcy court is not bound by the state rule but can apply equitable principles to determine the actual intent of the parties.

Said the Court at page 95, 62 S.Ct. at page 982, 86 L.Ed. 1293:

"[W]e are unable to say that the rule laid down is other than one of state law governing the relative rights of claimants in a state liquidation. Nothing decided in Erie R. Co. v. Tompkins, 304 U.S. 64 [58 S. Ct. 817, 82 L.Ed. 1188], requires a court of bankruptcy to apply such a local rule governing the liquidation of insolvent estates. The bankruptcy act prescribes its own criteria for distribution to creditors. In the Interpretation and application of federal statutes, federal not local law applies."

The Bankruptcy Act's "own criteria for distribution to creditors" was spelled out in Pepper v. Litton, 308 U.S. 295 pp.

304, 305, 60 S.Ct. 238 pp. 244–245, 84 L.Ed. 281 (1939) as follows:

"By virtue of § 2 a bankruptcy court is a court of equity at least in the sense that in the exercise of the jurisdiction conferred upon it by the Act, it applies the principles and rules of equity jurisprudence. * * Among the granted powers are the allowance and disallowance of claims; the collection and distribution of the estates of bankrupts and the determination of controversies in relation thereto; the rejection in whole or in part 'according to the' equities of the case' of claims previously allowed; and the entering of such judgments 'as may be necessary for the enforcement of the provisions' of the Act. * * *

"The bankruptcy courts have exercised these equitable powers in passing on a wide range of problems arising out of the administration of bankrupt estates. They have been invoked to the end that fraud will not prevail, *that substance will not give way to form, that technical considerations will not prevent substantial justice from being done."* (emphasis supplied)

It must be here observed that even under the 1953 provisions of the Pennsylvania Uniform Commercial Code parol evidence was admissible to effect a reformation of a note so as to show that it was signed in a representative capacity where an "injustice" resulted because of the Code proviso that "[a]n authorized representative who signs his own name to an instrument is also personally obligated unless the instrument names the person represented and shows that the signature is made in a representative capacity." Section 3–403(2).

In the Uniform Commercial Code Comment, paragraph 3 (12A P.S. § 3–403. p. 582) it is said:

"Subsection (2) is intended to provide a rule of law for the determination of the effect of the representative's signature from the face of the

instrument. It excludes parol evidence for any purpose except reformation. * * *

"The rule here stated is that the representative is liable personally unless the instrument itself clearly shows that he has signed only on behalf of another named on the paper. If he does not sign in such a way as to make that clear the responsibility is his. If there is injustice to him he may have the remedy of reformation, subject to the rules of the particular jurisdiction; * * *."

It is necessary that we direct our attention to the problem presented by the circumstance that the District Court's Order, from which this appeal was taken, not only vacated separate Orders of the Referee amending the appellant's Schedule A-3 by deleting the name of Industrial as a creditor of the estate and disallowing Industrial's claim, but also vacated the Referee's third Order which not only sustained the appellant's exceptions to the Specification of Discharge filed by Industrial and dismissed the Objections, but also granted the appellant his discharge.

The record of the proceedings before the Referee discloses that there was a 21-A examination of the appellant. In Industrial's Specification of Objections to Discharge it was alleged that the 21-A examination established "that the bankrupt [appellant] knowingly and fraudulently concealed from the trustee and creditors * * * property belonging to the estate of the bankrupt, and knowingly and fraudulently made a false oath or account in relation to a bankruptcy."

The Referee apparently was of the view that the sustaining of the appellant's exceptions to the Specification of Objections on the ground that Industrial had no standing to object to the appellant's discharge in view of its lack of creditor status obviated the necessity of his further consideration or disposition of the serious charges of misconduct made in the Specification. The Referee erred in this respect. He was duty bound to inquire into the merit of the charges of fraud made in the Objections although he had properly sustained exceptions to them by reason of his correct holding that Industrial lacked the status to make the Objections. The allegations of fraudulent conduct made in the Objections were not lost to the bankruptcy court by reason of their having been struck down under the circumstances here existing.

A charge of fraud is not an issue merely between the bankrupt and a given creditor " * * * but involves the integrity of the law itself; only such bankrupts are entitled to procure a discharge as have not offended against certain provisions of the Act, and in the administration of the discharge sections, the courts rest under a duty of inquiry." In re Povill, 30 F.Supp. 161 (E.D.N.Y. 1939). In In re Sims, 26 F.Supp. 933 (N.D.W.Va.1939) it was held that it was the duty of a bankruptcy court to require an investigation where Objections disclose acts of fraud even though the objecting creditor withdraws them. In that case the District Court ordered that the United States Attorney be requested to investigate the conduct of the bankrupt even though the Referee had granted the bankrupt his discharge after Objections had been withdrawn and no creditor had opposed confirmation of the discharge.

The appellant contends "that the issue of fraud is properly before this Appellate Court and that on the evidence this court should reverse the District Court and reinstate the order granting the discharge."

The issue of fraud was not before the District Court inasmuch as the Referee in his certification to it did not include the Notes of Testimony of the 21-A proceeding and for that reason we cannot dispose of it on this appeal.

Accordingly, upon remand the District Court should direct that the Referee supplement his certification by the inclusion of the Notes of Testimony of the 21-A proceeding. When the record is so sup-

plemented the District Court will be in a position to make an evaluation of the charges of fraudulent conduct on the part of the appellant bankrupt and to take such action as it may deem requisite under the circumstances.

If it finds the charges sufficiently serious it may instruct the trustee in bankruptcy or the United States Attorney to proceed with them in accordance with the provisions of the Bankruptcy Act.[6]

The Order of the District Court will be vacated and the cause will be remanded with directions to proceed in accordance with this Opinion.

6. "Sec. 47(a). Trustees shall * * * (9) oppose at the expense of the estates the discharges of bankrupts when they deem it advisable to do so * * *." (11 U.S.C. § 75).

"Sec. 14(d). When requested by the court, the United States attorney, located in the judicial district in which the bankruptcy proceeding is pending, or such other attorney as the Attorney General may designate, shall examine into the acts and conduct of the bankrupt and, if satisfied that probable grounds exist for the denial of the discharge and that the public interest so warrants, he shall oppose the discharge of such bankrupt in like manner as provided in the case of a trustee." (11 U.S.C. § 32).