In the Matter of CHICAGO EXPRESS, INCORPORATED, Bankrupt.

The PENNSYLVANIA RAILROAD COMPANY, Petitioner-Appellant,

v.

CHICAGO EXPRESS, INCORPORATED, Respondent-Appellee.

No. 371, Docket 28613.

United States Court of Appeals
Second Circuit.

Argued March 18, 1964.

Decided April 24, 1964.

Myron D. Cohen, New York City (Conboy, Hewitt, O'Brien & Boardman, New York City, Edward F. Butler, New York City, of counsel), for petitioner-appellant.

Sydney Krause, New York City (Krause, Hirsch, Gross & Heilpern, New York City, Myron Kove, New York City, of counsel), for respondent-appellee.

Before LUMBARD, Chief Judge, and FRIENDLY and HAYS, Circuit Judges.

FRIENDLY, Circuit Judge.

The Pennsylvania Railroad Company appeals from a decision of Judge Feinberg, in the District Court for the Southern District of New York, 222 F.Supp. 566 (1963), rejecting its claim that interline freight charges owing to it from the debtor, Chicago Express, a motor carrier, earned by furnishing "piggy-back" rail carriage to the debtor's trailers, were entitled to priority in the latter's arrangement proceeding under Chapter XI of the Bankruptcy Act. The Pennsylvania rested its claim to priority on the alternative theories that its share of amounts collected by the motor carrier from shippers constituted trust funds, and that since the traffic balances accrued between March 1, 1962 and the filing of the petition on May 11, 1962, they deserved priority under the so-called "six months rule" enunciated in Fosdick v. Schall, 99 U.S. 235, 25 L.Ed. 339 (1879).

As to the trust fund theory, we have nothing to add to Judge Feinberg's excellent discussion, 222 F.Supp. at 572. Although we accept the Pennsylvania's position that Chicago Express was a connecting carrier with the Pennsylvania and not a shipper over it, this, without more, did not create a duty on the part of Chicago Express to hold amounts due to the Pennsylvania in trust or make the

relationship other than that of debtor and creditor.

■ As to the claim for priority based on the six-months rule we think it unnecessary to determine whether and, if so, under what circumstances and to what extent that rule might apply to a motor carrier in an equity receivership or a proceeding for reorganization under Chapter X of the Bankruptcy Act. For the rule can have no application in a proceeding under Chapter XI.

To begin with, despite some statements that claims protected by the six-months rule constitute "equitable liens," Larsen v. New York Dock Co., 166 F.2d 687, 689 (2 Cir. 1948); Southern Ry. Co. v. Flournoy, 301 F.2d 847, 854 (4 Cir. 1962), it was made clear in New York Dock Co. v. S.S. Poznan, 274 U.S. 117, 121, 47 S.Ct. 482, 484, 71 L.Ed. 955 (1927), that the preferences given such claims by courts of equity were "not to be explained in terms of equitable liens in the technical sense, as is the case with agreements that particular property shall be applied as security for the satisfaction of particular obligations or vendors' liens and the like * * *." but "result rather from the self-imposed duty of the court * * * to require that expenses which have contributed either to the preservation or creation of the fund in its custody shall be paid before a general distribution among those entitled to receive it," even, in appropriate instances, out of the earnings or proceeds of mortgaged property. See the discussion in Cutcheon, Recent Developments in Federal Railroad Foreclosure Procedure, Ass'n of the Bar of the City of New York, Some Legal Phases of Corporate Financing, Reorganization and Regulation, 1926–30, pp. 105–110.

■ Priorities under the Bankruptcy Act are a creature of statute. 3 Collier, Bankruptcy, 2061 (1961 ed.). Congress has enacted different provisions with respect to priorities for the various types of proceedings authorized by the Act. For ordinary bankruptcy the controlling provision is § 64. In § 77, relating to railroad reorganizations, subdivision (b) provides that "unsecured claims, which would have been entitled to priority if a receiver in equity of the property of the debtor had been appointed by a Federal court on the day of the approval of the petition, shall be entitled to such priority and the holders of such claims shall be treated as a separate class or classes of creditors"; plainly this includes the rule of Fosdick v. Schall. See 5 Collier, Bankruptcy, ¶ 77.21 (1962). In Chapter X, relating to corporate reorganizations, Congress in § 102 ruled out the application of § 64, and provided in § 115 that the court "shall have and may, in addition to the jurisdiction, powers, and duties hereinabove and elsewhere in this chapter conferred and imposed upon it, exercise all the powers, not inconsistent with the provisions of this chapter, which a court of the United States would have if it had appointed a receiver in equity of the property of the debtor on the ground of insolvency or inability to meet its debts as they mature." [1] In contrast, § 302 subjects priority questions in Chapter XI proceedings to the rules stated in § 64.

■ The Pennsylvania may therefore prevail only if it can bring its claim within one of the classes enumerated by that section.[2] The only one contended to be pertinent is § 64, sub. a (5) according priority to "debts owing to any person, including the United States, who by laws of the United States is entitled to

[1]. The predecessor of Chapter X, § 77B of the Bankruptcy Act, was considerably more specific with respect to priorities; it provided, in subdivision b (10), priority for "unsecured claims which would have been entitled to priority over existing mortgages if a receiver in equity of the property of the debtor had been appointed by a Federal court on the day of

the approval of the petition or answer under this section * * *." 48 Stat. 915 (1934). This substantially followed the language of § 77 sub. c as originally enacted. 47 Stat. 1477 (1933).

[2]. See In the Matter of Pusey and Jones Corp., 295 F.2d 479 (3 Cir. 1961).

the priority, and rent owing to a landlord who is entitled to priority by applicable State law * * *." subject to a limitation as to the latter therein provided; it is contended that the equitable doctrine of Fosdick v. Schall is a "law of the United States" within that provision. The issue, although reminiscent of the great debates over the meaning of "[T]he laws of the several states" in § 34 of the Judiciary Act of 1789, 1 Stat. 92, see Swift v. Tyson, 41 U.S. (16 Pet.) 1, 10 L.Ed. 865 (1842); Erie R. R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); and of the "laws of the United States" in the Act of March 3, 1875, 18 Stat. 470, see Romero v. International Terminal Operating Co., 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959), is much more readily resolved. As the section stood in the Bankruptcy Act of 1898, 30 Stat. 563, it referred to "debts owing to any person who by the laws of the States or the United States is entitled to priority." It seems altogether plain that under the philosophy of Swift v. Tyson then prevailing, Congress thought that "laws" meant statutes, not doctrines judicially evolved. Had the reference to the "laws" of the United States been intended to import the six-months rule for certain industries into § 64, this would have created a strange and unexplained conflict with the general three-month priority for wages, limited to three hundred dollars per claimant, which was established by § 64, sub. b(4), now § 64, sub. a(2). Furthermore, railroad corporations, the prime instance of application of the "six-months rule," have been wholly excluded from the general provisions of the Bankruptcy Act since 1910, 36 Stat. 839, and they cannot invoke Chapter XI, § 306(3). If additional support for a construction excluding federal decisional law from § 64, sub. a (5) were needed, this might be found in the contrast drawn under the 1938 amendment, 52 Stat. 874, which, generally deleting priorities under "the laws of the States", continued to give priority to "debts owing to any person, including the United States, who by the

laws of the United States in [is] entitled to priority," and for "rent owing to a landlord who is entitled to priority by applicable State law"; to twentieth century ears, the singular, "law," is more apt to include judge-made law than the plural. However, in view of the lack of authoritative construction of the last quoted phrase, see 3 Collier, Bankruptcy, 2238 fn. 14, we think it best to leave that issue open.

Affirmed.