In the Matter of I. J. KNIGHT REALTY
CORP., Bankrupt.

Reading Company, Appellant.

No. 15507.

United States Court of Appeals
Third Circuit.

Argued May 5, 1966.

Reargued Dec. 8, 1966.

Decided Jan. 6, 1967.

Before STALEY, Chief Judge and McLAUGHLIN, KALODNER, HASTIE, SMITH, FREEDMAN and SEITZ, Circuit Judges.

## OPINION OF THE COURT

KALODNER, Circuit Judge.

The issue presented on this appeal is whether appellant's claim, if proved, is entitled to the priority status accorded to costs of administration by Section 64, sub. a(1) of the Bankruptcy Act.[1]

The facts are not in dispute, and have been stipulated. In substance, they are as follows:

On November 16, 1962, I. J. Knight Realty Corp. filed a petition for arrangement under Chapter XI of the Bankruptcy Act. On the same day, the District Court appointed a Receiver and authorized him to operate the debtor's business, which consisted principally in the leasing of the debtor's eight-story industrial building in Philadelphia. On January 1, 1963, this building was destroyed by a fire which spread to adjoining premises and caused damage to real and personal property of The Reading Company, appellant herein, and of others.

On April 3, 1963, appellant filed a claim for damages in the amount of $559,730.83, alleging that the receiver was negligent in permitting the fire to start and "to spread far beyond its normal confines." The claim specifically recited that it was "for administrative expenses due to the negligence of the Receiver in operation of business of the debtor." Other claimants have filed 146 additional claims, similarly grounded and similarly seeking priority status as administration expenses, totalling in excess

Thomas Raeburn White, Jr., Philadelphia, Pa. (Michael H. Malin, S. Laurence Shaiman, White & Williams, Philadelphia, Pa., on the brief), for appellant.

Edward L. Rogers, Atty., Dept. of Justice, Tax Div., Washington, D. C. (Richard M. Roberts, Acting Asst. Atty. Gen., Lee A. Jackson, Joseph Kovner, Attys., Dept. of Justice, Drew J. T. O'Keefe, U. S. Atty., Washington, D. C., on the brief), for appellee United States.

Owen B. Rhoads, Philadelphia, Pa. (Samuel Marx, Arthur E. Newbold, III, William J. Sharkey, Dechert, Price & Rhoads, Philadelphia, Pa., on the brief), for appellee trustee.

[1] "Sec. 64. *Debts which have priority.*

"a. The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment, shall be (1) the costs and expenses of administration, including the actual and necessary costs and expenses of preserving the estate subsequent to filing the petition; * * * Where an order is entered in a proceeding under any chapter of this Act directing that bankruptcy be proceeded with, the costs and expenses of administration incurred in the ensuing bankruptcy proceeding shall have priority in advance of payment of the unpaid costs and expenses of administration, including the allowances provided for in such chapter, incurred in the superceded proceeding and in the suspended bankruptcy proceeding, if any; * * *." Bankruptcy Act, § 64 sub. a(1), 11 U.S.C.A. § 104, sub. a(1), Sept. 25, 1962, 76 Stat. 571.

of $3,500,000. Those claims are held in abeyance by the Referee pending the ultimate disposition of the claim now on appeal.

On May 14, 1963, the debtor was voluntarily adjudicated a bankrupt. A Trustee was elected, and he moved to expunge appellant's claim on the ground that it was not an administration expense under Section 64, sub. a(1) of the Bankruptcy Act.[2] The Referee expunged the claim. On petition for review, the District Court concluded that the claim was not entitled to priority as an administration expense under Section 64, sub. a(1).[3] 242 F.Supp. 337 (E.D.Pa.1965).

We are of the opinion that the Order of the District Court should be affirmed.

■■ The right of a claim to priority status in a Chapter XI proceeding is controlled exclusively by Section 64 of the Bankruptcy Act by virtue of the provisions of Section 302 of the Act.[4] In the matter of Chicago Express, Incorporated, 332 F.2d 276, 278 (2 Cir. 1964), cert. den. 379 U.S. 879, 85 S.Ct. 146, 13 L.Ed. 2d 86; American Anthracite & Bituminous Coal Corp. v. Leonardo Arrivabene, S.A., 280 F.2d 119 (2 Cir. 1960). Manifestly, the right to priority depends upon the ability of the appellant to bring its claim within the language of the pref-

erential classification sought. Goldie v. Cox, 130 F.2d 690 (8 Cir. 1942).

We recently expressly ruled that expenses which "are unrelated to development, preservation or distribution of the bankrupt's assets" cannot be considered "costs and expenses of administration" within the meaning of Section 64 sub. a (1) as amended in 1962. In the Matter of Connecticut Motor Lines, Inc., 3 Cir., 336 F.2d 96 (1964).

We there said at pages 101–102:

"Our view of the boundaries of Section 64, sub. a(1) of the Bankruptcy Act is reinforced by the latest amendment to that Section in 1962. Prior to the 1962 amendment, Section 64, sub. a(1) set forth a number of individual first priority expense items under no explicit generic label. 'Costs and expenses of administration' was one of a number of particular items enumerated in Section 64, sub. a(1). In such a posture, the Section did lend itself to a broad construction. The amendment altered the language of the Section to read as follows:

" '(a) The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment, shall be (1) *the costs and ex-*

2. The stipulation of the parties, entitled "Case Stated", is set out at 242 F.Supp. at 338–339. It appears therefrom that the Trustee will have for distribution between $630,000 and $845,000, depending on the outcome of pending litigation against fire insurance companies. The status of the instant claim becomes important particularly to the United States, which has a substantial priority claim under Section 64, sub. a(4).

3. The District Court also concluded, as did the Referee, that appellant's claim was not provable as a general claim. 242 F.Supp. at 342. On this appeal, appellant "agrees that the claim here asserted is not provable as a general claim under § 63a(7) [11 U.S.C.A. § 103a(7) (1953 Supp.1964)] of the Act. * * *." Appellant's Brief, p. 20.

4. Chapter XI—Arrangements
"Sec. 302. The provisions of chapters I to VII, inclusive, of this Act shall,

insofar as they are not inconsistent with or in conflict with the provisions of this chapter, apply in proceedings under this chapter. For the purposes of such application, provisions relating to 'bankrupts' shall be deemed to relate also to 'debtors', and 'bankruptcy proceedings' or 'proceedings in bankruptcy' shall be deemed to include proceedings under this chapter. For the purposes of such application the date of the filing of the petition in bankruptcy shall be taken to be the date of the filing of an original petition under section 322 of this Act and the date of adjudication shall be taken to be the date of the filing of the petition under section 321 or 322 of this Act except where an adjudication had previously been entered." July 1, 1898, c. 541, § 302, as added June 22, 1938, c. 575, § 1, 52 Stat. 905; 11 U.S.C.A. § 702.

*penses of administration, including* the actual and necessary costs and expenses of preserving the estate subsequent to filing the petition; * * *.

"The impact of the amendment was to clarify the fact that Congress had considered all expenses laid out in Section 64, sub. a(1) costs and expenses of administration. The legislative history makes it clear that Congress, through the amendment, wanted to underline this factor. * * *

\* \* \* \* \* \*

"Though those enumerated costs and expenses of administration were never meant to be all inclusive, the 1962 amendment does indicate a concern that a meaningful view be had as to what is to be considered a cost and expense of administration. By explicitly structuring Section 64, sub. a (1) the Congress indicated both that all items in Section 64, sub. a(1) were costs and expenses of administration, and that the expression 'costs and expenses of administration' was not a catchall within the first priority. With such a Congressional intent apparent, it is preferable to isolate from Section 64, sub. a(1), as falling without a meaningful view of costs and expenses of administration, those expenses which, though they can be considered post-bankruptcy items, are unrelated to development, preservation or distribution of the bankrupt's assets."

■ This touchstone guide to the direction of Section 64 sub. a(1) finds support not only in the legislative history, as shown by the Court's opinion, but also in existing authority. See, American Anthracite & Bituminous Coal Corp. v. Leonardo Arrivabene, S.A., supra, 280 F. 2d at 124–126; Saper v. John Viviane & Son, Inc., 258 F.2d 826 (2 Cir. 1958); Guerin v. Weil, Gotshal & Manges, 205 F.2d 302 (2 Cir. 1953). As these cases indicate, it is not every post-petition event giving rise to a cost, expense or liability which qualifies the cost, expense or liability for priority status under Section 64 sub. a(1).

■ This is the standard applied by the court below. We agree with it, and with its conclusion that appellant's tort claim does not fall within the restrictive language of Section 64 sub. a(1) as an expense so related to the development, preservation or distribution of estate assets as to be deemed to have been incurred in connection therewith. Existing judicial interpretation and application of Section 64 sub. a(1) does not indicate any other result. Indeed, it is evident that the Congress knows how to assure the priorities it desires. See, In the Matter of Hudson & Manhattan Railroad Company, 178 F.Supp. 103 (S.D.N.Y. 1959), aff'd sub nom. Augus v. Stichman, 273 F.2d 707 (2 Cir. 1960); Senate Report No. 1954, accompanying the amending legislation, H.R. 5393, 1962 U.S.Code Congressional and Administrative News, pp. 2603, 2608.

■ Appellant seeks an application of Section 64 sub. a(1) founded upon principles, according to the authorities it cites, utilized in equity receivership proceedings. But we find no compelling persuasion in such authorities here, where we have to deal with a purposeful statutory restriction. Cf. In the Matter of the Pusey and Jones Corporation, 295 F. 2d 479 (3 Cir. 1961); In the Matter of Chicago Express, Incorporated, supra; American Anthracite & Bituminous Coal Corp. v. Leonardo Arrivabene, S.A., supra.

■ Federal courts cannot extend the reach or sweep of a federal statute beyond its clearly defined provisions as we recently explicitly ruled in American Dredging Company v. Local 25, Marine Division, International Union of Operating Engineers, 3 Cir., 338 F.2d 837 (1964), cert. den. 380 U.S. 935, 85 S.Ct. 941, 13 L.Ed.2d 822 (1965).

■ The purposeful statutory restriction, earlier, discussed, cannot be amended by judicial legislation to accomplish the result which the minority advocates.

As we said in *American Dredging* at page 850:

"Courts have inherent power to construe legislation and to *fashion* reme-

dies to effectuate the legislative design but they do not have power to legislate, directly or indirectly, nor can they *amend* legislation to extend its clearly defined limits under the shelter of their power to *fashion remedies*.

"The Constitution of the United States has reserved to the Congress the power to legislate. Article I, section 1 provides that 'All legislative Powers herein granted shall be vested in a Congress of the United States, which shall consist of a Senate and House of Representatives'.

"Not even the Supreme Court of the United States can usurp the legislative power reserved to the Congress by the Constitution. The Supreme Court itself has time and again paid homage to the doctrine of the separation of powers decreed by the Constitution and declared that judicial legislation is abhorrent to, and in violation of, the Constitutional scheme."

█ Section 64 provides that "actual and necessary expenses of preserving the estate" are entitled to a priority. The words "actual and necessary" require that the expenses be proximately related to the preservation of the estate and that they must be reasonably anticipated as a cost of operating the business. Cf. Jopek v. New York Central R. R., 353 F. 2d 778 (C.A. 3, 1965). The word "necessary" in § 162(a) of the Internal Revenue Code of 1954 has been similarly construed.

█ This construction adequately answers the question as to whether the costs of insurance would be entitled to a priority. The insurance costs which were reasonable or which were incurred in reasonable anticipation of liability within certain limits would obviously fall within § 64. Those premiums, however, which were excessive—which provided for liability far in excess of that which could be reasonably anticipated—would

not be entitled to a priority and, in fact, the receiver could be surcharged for their cost.

For the reasons stated, the Order of the District Court will be affirmed.

FREEDMAN, Circuit Judge (dissenting).

I dissent from the majority's conclusion that § 64a(1) requires the virtual immunization from tort liability of a business which is conducted by a receiver in a Chapter XI proceeding. Congress has not given us a blueprint which yields an immediate and unequivocal answer to the question and I would therefore approach it as would men of practical business experience. I believe the conclusion to which this points is in harmony with the applicable law and accords with the equitable role of the Bankruptcy Court (§ 2 of the Bankruptcy Act, 11 U.S.C. § 11(a); see, e. g., Bank of Marin v. England, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966); In re Laskin, 316 F.2d 70, 73 (3 Cir. 1963)), which applies in Chapter XI proceedings as elsewhere. See SEC v. United States Realty & Improvement Co., 310 U.S. 434, 455–458, 60 S.Ct. 1044, 84 L.Ed. 1293 (1940).

The fundamental purpose of a Chapter XI proceeding, unlike a straight bankruptcy, is the ultimate rehabilitation of the debtor. Nicholas v. United States, 384 U.S. 678, 684–685, 86 S.Ct. 1674, 16 L.Ed.2d 853 (1966); SEC v. American Trailer Rentals Co., 379 U.S. 594, 603–607, 85 S.Ct. 513, 13 L.Ed.2d 510 (1965). The inevitable consequence of this is the continued operation of the business of the debtor and an on-going situation decisively different from the frozen rigidity of a straight bankruptcy liquidation. The reorganization court therefore applies its equitable powers to carry out this wider, business purpose.[1] Both from equitable considerations and because Congress has specifically provided that a re-

---

1. See Matter of South Jersey Land Corp., 361 F.2d 610, 614–615 (3 Cir. 1966); Matter of Fleetwood Motel Corp., 335 F.2d 857, 862 (3 Cir. 1964), both Chapter X proceedings, which, despite their

differences from Chapter XI, are fundamentally similar in looking to continuation of the business rather than liquidation. See SEC v. American Trailer Rentals Co., supra.

ceiver who operates the business of a debtor shall do so subject to the same requirements of law and in the same manner as if he were the debtor (28 U.S.C. § 959(b)),[2] the courts have recognized that during the pendency of a Chapter XI proceeding the receiver's operation of a business should involve the risks and liabilities which normally would flow from a business operation. Such expenses therefore are entitled to payment as administrative expenses before the pre-bankruptcy claims of creditors, for whom the business is being operated as if they were stockholders. 3 Collier on Bankruptcy (14th ed. 1966), § 62.15, p. 1540. Thus, taxes incurred during a receivership which is established, not to wind up the business, but to foster it, have been given priority as an expense of administration. So it has been held in an equity receivership,[3] in the operation of a business in bankruptcy liquidation,[4] and in a Chapter XI proceeding.[5] These decisions have the utmost significance. They accord priority under § 64a(1) to taxes, which are not specifically listed in that section, even though the automatic accrual of such liabilities leaves no room for the rationale that priority is granted to encourage the extension of credit to the debtor.

There is no equitable reason why the claim for a tort committed by the receiver after the filing of the petition should not have the same priority which is given to a tax claim or even a contractual obligation[6] incurred after the filing of the petition. Like the operation of motor vehicles by the receiver or his employees, the shutting off of water pipes, which led to the fire, is part of an activity which may involve much profit to the estate and help to preserve the assets. It should also incur the well-known price or cost of such activities, i. e., the cost of liability insurance premiums or, absent insurance, direct responsibility for negligence as a cost and expense of preserving and managing the estate. The argument of the government that the risk of such liability would make suppliers unwilling to extend credit and secured creditors reluctant to accept an arrangement, ignores the ability to provide against that risk by insurance. To refuse to recognize claims resulting from the operation of the business is to create a substantial immunity from liability, ironically enough, at a time when it is being generally recognized that tort immunity has little justification. See, e. g., United States v. Muniz, 374 U.S. 150, 165–166, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963). For it is clear that a tort claim based on post-petition activities cannot be proven as an ordinary claim. (See § 63 of the Bankruptcy Act, 11 U.S.C. § 103.) Today's decision, therefore, will discourage receivers and creditors of the debtor from approving expenditures for premiums for public liability insurance. It will not be much alleviated by the menace of surcharge for premiums which the majority now directs against receivers for misjudging the treacherous ground of

---

2. Section 959(b) reads:
   "A trustee, receiver or manager appointed in any cause pending in any court of the United States, including a debtor in possession, shall manage and operate the property in his possession as such trustee, receiver or manager according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof."

3. People of State of Michigan by Haggerty v. Michigan Trust Co., 286 U.S. 334, 52 S.Ct. 512, 76 L.Ed. 1136 (1932), Cardozo, J., involving state corporate franchise taxes.

4. Boteler v. Ingels, 308 U.S. 57, 60 S.Ct. 29, 84 L.Ed. 78 (1939), involving automobile license fees and penalties.

5. Nicholas v. United States, 384 U.S. 678, 86 S.Ct. 1674, 16 L.Ed.2d 853 (1966), where it was said that federal income taxes and interest thereon were an administrative expense.

6. Compare In re Delaware Hosiery Mills, Inc., 202 F.2d 951 (3 Cir. 1953), and In re Arbycraft Co., 288 F.2d 553, 557 (3 Cir. 1961), where we treated claims as administration expenses under § 64a(1), although there was no express authorization in the statute.

"reasonable" insurance, or "reasonable anticipation of liability," or "excessive" premiums. Once again, it seems to me, contractual claims are unjustifiably exalted and the risks to which the public is exposed by torts which experience shows are an inevitable result of the operation of a business are treated as outcast. And what should a receiver do if in his wise judgment it is advantageous to the estate to continue to operate the business by following its former policy of acting as a self insurer rather than to begin to pay large premiums?

The trend of the decisions supports the view that the present claim is entitled to priority. Priority as an administrative expense has been accorded tort claims in straight bankruptcy cases.[7] It has been similarly granted in equity and statutory receiverships,[8] and although it is true that equity receiverships are not governed by § 64a(1), nevertheless, with respect to administration of an estate, such receiverships are fundamentally similar to Chapter XI proceedings, a similarity which the Supreme Court has recognized in determining the scope of § 64a(1). See Nicholas v. United States, 384 U.S. 678, 684, 86 S.Ct. 1674, 16 L.Ed.2d 853 n. 12 (1966). There is no reason why we should not do the same.

The three cases cited by the majority in support of its refusal to apply the equity rule, In re Pusey & Jones Corp., 295 F.2d 479 (3 Cir. 1961), In re Chicago Express, Inc., 332 F.2d 276 (2 Cir. 1960), cert. denied, 379 U.S. 879, 85 S.Ct. 146, 13 L.Ed.2d 86 (1965), and American Anthracite & Bituminous Coal Corp. v. Leonardo Arrivabene, S.A., 280 F.2d 119 (2 Cir. 1960), differ significantly from this case. None of them involved tort claims, and in each of them the claimant admittedly was entitled to share with the general creditors. Moreover, neither *Pusey & Jones* nor *Chicago Express* involved claims of priority under § 64a(1) and both dealt with the application to Chapter XI proceedings of a special rule that had come to be applied in reorganizations of "public corporations" but was not a general doctrine of equity receiverships; indeed the conclusion in both cases was based on equitable considerations. *American Anthracite* dealt with the special problem of the assumption of existing contracts by the debtor in possession for which there was a history of special statutory provisions in bankruptcy.

The majority relies heavily on In the Matter of Connecticut Motor Lines, 336 F.2d 96 (3 Cir. 1964). We there held that tax expenses arising out of activities which occurred prior to the filing of the petition were properly allocable to the pre-petition period and therefore not entitled to be treated as administrative expenses, but were included in § 64a(4). The opinion of the court stated that "it is preferable to isolate from Section 64, sub. a(1), as falling without a meaningful view of costs and expenses of administration, those expenses which, though they can be considered post-bankruptcy items, are unrelated to development, preservation or distribution of the bankrupt's assets." (p. 102) But that statement must be read in the light of the critical point, which the court emphasized, that priority would have been accorded the taxes if they had accrued after the filing of the petition, because in such case they would have been a "cost of protecting the fund". (p. 100) A tort claim similarly is entitled to priority; it is as much an ex-

---

7. Vass v. Conron Bros. Co., 59 F.2d 969 (2 Cir. 1932); In re Progress Lektro Shave Corp., 35 F.Supp. 915 (D.Conn. 1940); In re Michigan Motor Specialties Co., 288 F. 377 (E.D.Mich.1923).

8. E. g., Texas & Pacific Railway Co. v. Bloom's Adm'r., 164 U.S. 636, 642–643, 17 S.Ct. 216, 41 L.Ed. 580 (1897); Barton v. Barbour, 104 U.S. 126, 130, 26 L.Ed. 672 (1881); Bereth v. Sparks, 51 F.2d 441, 80 A.L.R. 909 (7 Cir. 1931) citing numerous cases; Anderson v. Condict, 93 F. 349, 354 (7 Cir. 1899); see also Valdes v. Feliciano, 267 F.2d 91, 95 (1 Cir. 1959).

pense of management or "development" of the estate as is a tax claim.[9]

Finding no expression in the statute to the contrary, but rather sufficient authority in its language to include the present claim, I would not recoil from doing so because it is based on a tort. I would follow the terse and specific dictum of Judge Learned Hand that "the liquidation of the lessee's resulting damages [from the trustee's negligence] was as much a part of the usual administration in bankruptcy, as that of the pay of accountants, custodians or other assistants, employed by the trustee." Vass v. Conron Bros. Co., 59 F.2d 969, 971 (2 Cir. 1932).

WILLIAM F. SMITH and SEITZ, Circuit Judges, concur in this dissent.

---

9. Guerin v. Weil, Gotshal & Manges, 205 F.2d 302 (2 Cir. 1953), cited by the majority, does not govern here, and in any event, its disallowance of the expenses of petitioning creditors for the service of attorneys and accountants was overturned by Congress in 1962, Pub.L. 87–681. See S.Rep. No. 1954, 87th Cong., 2d Sess. (1962), 1962–2 U.S.Code, Cong. & Adm.News, pp. 2603, 2608.