In re HUNTER.

(District Court, E. D. Pennsylvania.   March 6, 1907.)

No. 2,163.

1. BANKRUPTCY—ACTS OF TRUSTEE—BANKRUPT'S LEASEHOLD—HOLDING OVER.
    Where a bankrupt's trustee, with knowledge of the expiration of the bankrupt's lease, held over for several days notwithstanding a notice by the landlord to quit, the trustee became a trespasser and was personally liable for the damages sustained.

2. SAME—LIABILITY OF ESTATE.
    Where a bankrupt's trustee acted in good faith in holding over after the expiration of the bankrupt's lease for the purpose of holding a sale of the bankrupt's stock in the rented premises, which was of benefit to the estate, the trustee was entitled to reimbursement from the estate for the damages for which it was liable to the landlord, and the landlord was entitled to prove such damages against the estate in a proceeding to which the trustee was a party before establishing his claim against the trustee in a separate suit, to prevent the circuity of action.

In Bankruptcy.   Certificate from referee concerning claim of William Kline.

Joseph R. Dickinson, for claimant.
Edward S. Kremp, for trustee.

J. B. McPHERSON, District Judge.   It is agreed that the facts out of which this controversy arises are accurately set forth in the affidavit of claim, which is as follows:

"At Reading, in said District of Eastern Pennsylvania, on the 24th day of June A. D. 1905, came William Kline of Reading, Berks county, in said District of Eastern Pennsylvania, and made oath and says, that Jacob V. R. Hunter, the person by whom a petition for adjudication of bankruptcy has been filed, was, at the time of the filing of said petition, and still is, and his bankrupt estate is, justly and truly indebted to the said deponent in the sum of two hundred and eighty-five dollars; that the consideration of said debt is as follows:

"One hundred and thirty-five dollars of said claim is due to the claimant for rent and use and occupation of premises No. 327 Penn street, Reading,

Pa., during the time of the tenancy of the bankrupt, under an oral lease at a rental of $45 per month, immediately before the date of his bankruptcy, to wit, from January 1, 1905, to January 26, 1905, and also for the use and occupation of said store stand by the Pennsylvania Trust Company, who occupied the same as trustee, maintaining the goods and effects of the bankrupt therein from January 26, 1905, until after April 1, 1905, a total period of three months, at the rental of $45 per month.

"And the further sum of $150 is claimed against the bankrupt estate for damages suffered by the claimant under the following narrative of facts: Prior to the bankruptcy, the bankrupt and claimant entered into a written lease for the said store premises for a period of one year, to begin on April 1, 1905, at the monthly rental of $45 per month, which lease is submitted here with the request that it may be withdrawn and a copy thereof substituted; that after the bankruptcy aforesaid the claimant demanded to know from the Pennsylvania Trust Company, the trustee in bankruptcy, whether it would assume the said lease and its obligations, otherwise the said Kline desired and demanded possession of said premises on April 1, 1905, so that he would be able to rent it to persons who then were desirous of renting the same. The correspondence between the parties is as follows:

" 'March 24th, 1905.

" 'Pennsylvania Trust Company, Trustee in Bankruptcy of Jacob V. R. Hunter—

" 'Gentlemen: As attorney for William Kline, I desire to notify you of the fact that Mr. Kline holds a lease entered into with Mr. Jacob V. R. Hunter, for premises No. 327 Penn street, Reading, Pa., for one year from April 1, 1905, at the annual rental of $540. You as his trustee, are in possession of the premises and I desire to know whether you will assume the obligations of the lease, and to further state that Mr. Kline can procure a tenant if the premises are vacated on or before April 1st next. If you do not vacate he will not be able to procure a tenant. If you desire to assume the obligations of the lease, all right, and if I do not hear from you within a few days I will assume that you intend to carry out Mr. Hunter's contract and make yourself liable for the rent. Yours truly, C. H. Ruhl.'

"To which the trustee replied:

" 'March 25th, 1905.

" 'C. H. Ruhl, Esq., 534 Washington street, Reading, Penna.—

" 'Dear Sir: In reply to your letter of the 24th inst. we would say that the Pennsylvania Trust Company, trustee of J. B. R. Hunter, the bankrupt, will not assume the lease-hold which descended to them among other assets of the said bankrupt, and that the premises will be vacated on and after April 4th next, the day after the sale of the goods, etc., which are on the premises, and as to which sale the notices have been sent to the creditors.

" 'Hoping this will be satisfactory, we are,

" 'Very truly yours, Edward H. Knerr, Secretary.'

"To which reply was made as follows:

" 'In re lease William Kline to Jacob V. R. Hunter.

" 'March 25th, 1905.

" 'The Pennsylvania Trust Company, Reading, Pa.—

" 'Gentlemen: Replying to yours of the 25th inst., I beg to say that your continuing in possession after the first of April next is in my judgment a ratification or assumption of the lease referred to in my former letter and that Mr. Kline will hold you responsible for the damages from loss of rent by reason of your possession after April 1st.

" 'He will, of course endeavor to rent it and reduce the damages to a minimum, but, if unable to rent upon as favorable terms as his lease with Mr. Hunter provides for, he will expect your company to make good the deficiency.

" 'Your truly, C. H. Ruhl, Atty. for Wm. Kline.'

"That, notwithstanding the refusal of the Pennsylvania Trust Company to assume the said lease and its obligations, and the demand for possession

of said premises on April 1st, the said trustee unlawfully continued in possession of said premises as trustee for the bankrupt, and kept therein the effects of the bankrupt's estate, and refused to deliver possession of the same until April 7, 1905, when the following letter was written to claimant:

"'April 7, 1905.

"'Mr. William Kline, Reading, Pa.—

"'Dear Sir: Enclosed herewith we hand you keys to the store No. 327 Penn street, this city; the property of Jacob V. R. Hunter, bankrupt, having been removed, we hereby deliver up possession of the said premises to you.

"'Kindly acknowledge the receipt of the keys, and you will oblige,

"'Very truly yours,                    H. B. Hagy, Secretary.'

"To which again reply was made:

"'H. B. Hagy, Esq., Secretary, Pennsylvania Trust Company, Reading, Pa.—

"'Dear Sir: I have yours of the 7th inst. addressed to William Kline, in which you state that you hand the keys to store room No. 327 Penn street, to him, that the property of Jacob V. R. Hunter, bankrupt, has been removed and you deliver possession of said premises to Mr. Kline.

"'In reply thereto I beg to say that Mr. Kline accepts the keys and possession, not as an acknowledgment of your surrender of the lease, but will, on your behalf, endeavor to procure a tenant and reduce your obligation to him on the lease as much as possible.

"'Your truly,                    C. H. Ruhl, Attorney for William Kline.'

"That, at the time the claimant demanded the possession of the premises as aforesaid, he had a tenant, to wit, the Fashion Store Company, ready and willing to lease the said premises for a period of three months, providing possession would be given on April 1 or 2, 1905, at the monthly rental of $50, and tendered to him $150 to pay the rent in advance for said period, which fact was known to the said trustee, but, by reason of the said trustee's refusal to deliver possession on the said April 1st, and withholding possession from the claimant until April 7, 1905, the said Fashion Store Company refused to lease the said premises, and the said claimant was deprived and lost the benefits of such lease; that, although the claimant endeavored to rent the said store building, he has thus far wholly failed to find a tenant therefor, wherefore he claims that, by reason of the trustee's acts in retaining possession after April 1, 1905, against the protest of the claimant, he has suffered damages in the sum of $150, the amount of rent he would have received from the said Fashion Store Company, and claims this sum against the bankrupt's estate in addition to the rental value of the said premises during the tenancy of said Hunter, for which he has not been paid, as aforesaid, and the occupancy of the trustee to April 1, 1905; that no part of said debt has been paid, and that there are no set-offs or counterclaims to the same and that deponent has not, nor has any person by his order, or to his knowledge or belief, for his use, had or received any manner of security for said debt whatever, and that no note has been received for said debt, and no judgment rendered thereon."

The referee allowed $135 for rental and for use and occupation from January 1 to April 1, 1905, and allowed a further sum of $10.36 for use and occupation by the trustee from April 1st to April 7th. He disallowed the landlord's claim for $150 for the loss of rent from April 1st to July 1st, caused by the refusal of the trustee to vacate the premises on April 1st, whereby the new tenant was prevented from taking possession. This claim for damages is the only subject now before the court.

It is conceded that the claim is not provable against the estate under the provisions of section 63, Bankr. Act, July 1, 1898, c. 541, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3447], but it is contended that a wrong was done by the refusal to yield possession of the premises upon April

1st, for which an action would lie against the trustee personally; and, further, that, as the wrong was done in the interest of the bankrupt estate, and to its actual profit, by saving the cost of removing the goods and by obtaining better prices at the sale upon the bankrupt's premises, the trustee would have a valid claim against the estate to be reimbursed whatever damages it might be compelled to pay in an action by the landlord, and therefore, to prevent circuity of action, the damages may be allowed in the first instance against the estate. I believe this position to be sustained by the authorities. Undoubtedly the trustee was a trespasser after April 1st. It was bound to know that it had no right to remain on the premises after that date, except by agreement with the landlord; and especially is this true after the landlord had given express notice that possession was desired on April 1st, and that he had secured a tenant for a term beginning on that day. The fact that the notice was not given until March 21th is of little or no importance. The trustee knew exactly when the bankrupt's lease expired, and it was bound to know that, if it continued to occupy the premises after April 1st, without the landlord's express agreement, it would do so at its own risk. If, therefore, it made arrangements to hold a sale on the premises upon April 4th, it did so with constructive knowledge that such an arrangement was subject to be defeated by notice to vacate, and when the notice was received its duty was to give up the premises before April 1st. Six days afforded ample time to remove the goods, and, if an adjournment of the sale or a new order to sell was thereby rendered necessary, the delay was of slight consequence, and no one was to blame except the trustee.

The landlord having, therefore, been entitled to the possession of his property on April 1st, and the trustee having refused to surrender, the latter became a trespasser and was liable in damages. The direct and immediate consequence of its refusal was that the new tenant threw up the lease, and, as the landlord was not able to find another tenant within the term, he lost the rent for three months. For this sum I think the trustee would be directly and personally liable to be sued, and the remaining question is, whether the damages that might have been recovered in such an action can be allowed against the bankrupt estate. Ordinarily, no doubt, a claim for damages against a trustee should first be prosecuted to judgment, in order that he may have an opportunity to make defense against the charge of wrongdoing; but as the present trustee is a party to this proceeding with a full opportunity to be heard, and has made no sufficient defense, and as all parties in interest are before the court, I feel justified in treating the case as if recovery had already been had against the trustee. If, therefore, the bankrupt estate ought to indemnify the trustee, I see no reason why the indemnity should not be paid directly to the landlord. As I have already said, under the facts now before the court, the estate having profited by the trespass, and the good faith of the trustee having been conceded. the liability of the estate to reimburse the trustee seems to be supported by sufficient authority. Thus, in 2 Lewin on Trusts (1st Am. Ed.) p. 638, it is said:

"So where a trustee employed a bailiff to fell some trees, and the woodcutter allowed a bough to fall on a passer-by, who was injured and recovered

damages from the trustee, it was held that as the trustee had meant well, had acted with due diligence, and had employed a proper agent to do an act which was within the sphere of the trustee's duty, and the agent made a mistake, the trustee was entitled to charge the damages on the trust estate."

This statement of the text is justified by the decision in Benett v. Wyndham, 4 De G. F. & J. 259.

In Raybould v. Turner, 1 Ch. (1900) 199, the court said:

"The first question I have to consider is whether the same principle ought to be applied to the case of a trustee claiming a right to indemnity for liability for damages for a tort, as is applied to the simpler case of claims made against a trustee by ordinary business creditors, where they have been allowed the benefit of his right to indemnity by proving directly against the assets; the kind of case of which Dowse v. Gorton is a recent illustration. It has been argued that there is no authority to justify me in holding that, where damages have been recovered against a trustee in respect of a tort, the person so recovering can avail himself of the trustee's right to indemnity, and so go direct against the trust estate; but the authority of Benett v. Wyndham goes to show that if a trustee in the course of the ordinary management of his testator's estate, either by himself or his agent, does some act whereby some third person is injured, and that third person recovers damages against the trustee in an action for tort, the trustee, if he has acted with due diligence and reasonably, is entitled to be indemnified out of his testator's estate. When once a trustee is entitled to be thus indemnified out of his trust estate, I cannot myself see why the person who has recovered judgment against the trustee should not have the benefit of this right to indemnity and go direct against the trust estate or the assets, as the case may be, just as an ordinary creditor of a business carried on by a trustee or executor has been allowed to do, instead of having to go through the double process of suing the trustee, recovering the damages from him, and leaving the trustee to recoup himself out of the trust estate. I have the parties interested in defending the trust estate before me, and I have also the trustee, and he claims indemnity, and, assuming that a proper case for indemnifying him is made out by the evidence. I think his claim should be allowed."

See, also, Miller v. Smythe, 92 Ga. 154, 18 S. E. 46; 28 Am. & Eng. Ency. of Law (2d Ed.) p. 943; and 3 Pomeroy, Eq. Juris. § 1070, note ."d," and cases cited.

The decision of the referee is reversed, and he is directed to allow the landlord's claim for damages.