**UNITED STATES of America,**
**Appellee,**

v.

**Larry CHIRCO, Appellant.**

**No. 34, Docket 25587.**

United States Court of Appeals
Second Circuit.

Argued Oct. 13, 1959.

Decided Dec. 28, 1959.

---

George P. Kosefas, New York City (George R. Spitz, New York City, on the brief), for appellant.

David R. Hyde, Asst. U. S. Atty., Southern Dist. of New York, New York City (S. Hazard Gillespie, Jr., U. S. Atty., Southern Dist. of New York, Kevin Thomas Duffy, Asst. U. S. Atty., Southern Dist. of New York, New York City, on the brief), for appellee.

Before CLARK and MOORE, Circuit Judges, and SMITH, District Judge.

PER CURIAM.

Defendant, Larry Chirco, with Anthony Lombardi and Paul Gangi, was indicted for conspiring to deal in narcotics in violation of 21 U.S.C.A. §§ 173, 174 between August 15, 1958 and the date of the indictment (October 22, 1958). The defendants Lombardi and Gangi were also charged under a substantive count with the sale of narcotics. Lombardi entered a plea of guilty and, at the conclusion of the trial, Gangi was acquitted by the jury. The jury found Chirco guilty of conspiracy. From the judgment of conviction Chirco appealed.

The trial judge had charged that, should Gangi be found not guilty, the jury was to disregard as against Chirco testimony concerning events which took place prior to October 13, 1958. That date represented the first mention of Chirco by the following testimony of the government agent concerning an event at a bar when Chirco entered and met Lombardi and the government agent:

"He walked over to Lombardi and I [sic], and Lombardi introduced me to him. Lombardi told me that from now on he would use Chirco to deliver the stuff.

"I told—I asked Chirco how he intended to do it. Chirco told me that he will wait for a telephone call from Lombardi and then he would contact me somewhere and that we would drive around in my car down dark, deserted streets to make sure we are not being followed and Chirco would show me where he hid the stuff.

"I told Lombardi I don't like the idea. I asked Chirco, the defendant Chirco, if he had ever done time for narcotics. Chirco told me no.

"I then told Lombardi that it wouldn't be a bad idea at that because Lombardi was hot and he was dangerous. I told Lombardi that I had been beaten on the other deal and I didn't want nobody fooling around with this package.

"Lombardi told me I could trust Chirco with the stuff and that if anything should go wrong Lombardi would assume all responsibility on it.

"It was about 8:30 P.M. Chirco started to leave and I told the defendant Chirco to look at my green colored Buick outside so that when we met for the delivery of the stuff that he would know my car. Chirco then left the bar" (App. 26a, 27a).

This conversation, although quite brief, is extensive enough to contain a description of the conspiratorial scheme and is in its communication to the government agent the overt act alleged in the indictment. If believed by the jury it is sufficient. It is distinguishable from United States v. Ah Kee Eng, 2 Cir., 1957, 241 F.2d 157, 62 A.L.R.2d 159, for Eng was no more than a willing purchaser, while Chirco is painted by the agent as agreeing to take part in a plan to transport and sell. That this evidence took up only a small part of the trial is not significant. The prosecution was attempting to prove a continuing conspiracy between Gangi and Lombardi which

**710**

was later joined by Chirco, and the charge carefully separated the chronology of events.

Chirco further complains about the admission in evidence of a slip of paper bearing the name "Larry" and a telephone number which was found in Lombardi's apartment. But the resulting inference merely tended to establish that which Chirco himself acknowledged by testifying he sought Lombardi's assistance in securing employment, namely, that Lombardi was an acquaintance.

The judgment is affirmed.