In the Matter of I. J. KNIGHT REALTY
CORPORATION, Bankrupt.
No. 27540.

United States District Court
E. D. Pennsylvania.
June 9, 1965.

Thomas Raeburn White, Jr., and
Michael H. Malin, Philadelphia, Pa., for
petitioner, The Reading Co.

Owen B. Rhoads and Samuel Marx,
Philadelphia, Pa., for trustee in bank-
ruptcy.

Drew J. T. O'Keefe, U. S. Atty., Sidney Salkin, Asst. U. S. Atty., Arnold Miller, Atty., Dept. of Justice, Washington, D. C., for the Government.

VAN DUSEN, District Judge.

This case is before the court upon the petition of the Reading Company to review an order of the Referee in Bankruptcy, expunging a claim filed by the Reading Company asking for damages allegedly caused by the negligence of the Receiver in carrying on the business of the bankrupt (pp. 34 and 35 of Document 8). Petitioner seeks to have its claim, based on losses suffered in a fire which started on the bankrupt's property, allowed as a priority claim for administrative expenses under § 64, sub. a (1) of the Bankruptcy Act, 11 U.S.C. § 104. Petitioner is but one of over a hundred claimants who have filed proofs, but it has been agreed that the instant case is a test case which will decide the right of all claimants to prove their claims as administrative expenses.

■ The CASE STATED, as filed with the Referee and signed by counsel for the Trustee and counsel for the claimant, is as follows:

"On November 16, 1962, I. J. Knight Realty Corp. (hereafter Knight Realty) filed a petition for an arrangement under Chapter XI of the Bankruptcy Act. On the same day, Judge Van Dusen appointed Francis Shunk Brown, 3rd, Esquire, as receiver and authorized him to operate the business of Knight Realty.

"The only significant asset of Knight Realty was an eight-story industrial structure known as the Fretz Building, located at 10th & Diamond Streets, Philadelphia, Pennsylvania. The business of Knight Realty consisted of leasing space in the Fretz Building and operating the building for the benefit of its tenants.

"On January 1, 1963, the Fretz Building was totally destroyed by a fire of unusual intensity. The conflagration spread to adjoining premises, damaging or destroying real and personal property of the Reading Company and others.

"On April 3, 1963, the Reading Company filed a claim for $559,-730.83 which it styled as a claim 'for administrative expenses due to the negligence of the Receiver' in operating the business of Knight Realty. In essence, the Reading Company's claim alleges that the receiver, Francis Shunk Brown, 3rd, was negligent in permitting the fire to start and 'spread beyond its normal confines.' Thereafter, other fire loss claimants filed 146 additional claims for administration expenses based on the alleged negligence of the receiver in operating the business of Knight Realty. The total of all such claims exceeds $3,500,-000. All of the well pleaded allegations of fact in the Reading Company's Statement of Claim are to be deemed true for the purposes of the Trustee's Motion to Dismiss or Expunge the Claim of the Reading Co.[1]

"On May 14, 1963, Knight Realty was adjudicated a bankrupt pursuant to a voluntary consent to adjudication filed on its behalf. Francis Shunk Brown, 3rd, was sub-

---

1. The case is now before the court in a situation similar to that where the defending party has filed a motion to dismiss (to be treated as one for summary judgment under F.R.Civ.P. 12(b), which is made applicable by General Order in Bankruptcy 37) on a record which concedes a factual issue which will have to be determined by trial if the motion to dismiss is denied. The factual issue conceded for purposes of this Motion is whether or not the Receiver was negligent. The undersigned rejects the apparent contention of the Government that suit for the damage claimed by Reading Company could not be brought, as a matter of law, under 28 U.S.C. § 959(a) on the basis of this record.

sequently elected Trustee in Bankruptcy of Knight Realty.

"The Trustee, Mr. Brown, has petitioned this Court to expunge the Reading Company's claim on the ground that it is not an administration expense within the meaning of the Bankruptcy Act. This Court's ruling on the Reading Company's claim for administration expenses will establish the law of case with respect to all other claims for administration expenses based on the alleged negligence of the receiver.

"Other claims filed in this matter consist of federal tax claims of $244,953.91, and other tax claims of $70,823.19. Various other claims are as follows: secured, $230,619.-04; unsecured, $76,905.47; and wages, $860.00. The Trustee, according to present estimates, will have between $630,000 and about $845,000 depending on the outcome of certain litigation against fire insurance companies presently pending."

There are two questions presented by the facts of the case at bar:

(A) The principal question is whether the Reading Company's claim comes within "the costs and expenses of administration" of § 64, sub. a(1) of the Bankruptcy Act.

(B) If the answer to (A) is in the negative, does the Reading Company still have a "provable" claim so that the Referee should not have expunged it.

A. "Costs and expenses of administration" (§ 64, sub. a(1) of the Bankruptcy Act, as amended—11 U.S.C. § 104, sub. a(1)).

The claim of the Reading Company does not fall within the above-quoted language of § 64, sub. a(1) of the

Bankruptcy Act, as amended to December 1962, for these reasons:

1. The claim does not fall within the language of the Act, strictly construed

Section 64 of the Bankruptcy Act, as amended in 1962, provides in pertinent part as follows:

" § 64. Debts Which Have Priority. (a) The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment shall be (1) the costs and expenses of administration, including the actual and necessary costs and expenses of preserving the estate subsequent to filing the petition; * * *."

Where statutes involving priorities are in issue, a strict construction must be placed thereon and the burden falls upon those asserting the priority to establish that their claim falls within the class of those intended to be preferred. In re American Anthracite and Bituminous Coal Corp., 171 F.Supp. 377, 381–382 (S.D.N.Y.1959), aff'd. 280 F.2d 119 (2nd Cir. 1960).

Since this claim is not "an actual and necessary cost and expense of preserving the estate," there is no specific authority for paying this claim. Where no explicit authority exists in the Bankruptcy Act for allowance of expenses out of the bankrupt's estate, such an allowance is appropriate only in exceptional cases. In re Friedman, 232 F.2d 151 (2nd Cir. 1956); Guerin v. Weil, Gotshal & Manges, 205 F.2d 302 (2nd Cir. 1953).

2. The legislative history of the Bankruptcy Act requires that § 64, sub. a(1) may not be construed to apply to this claim.

(a) Since Congress has shown by its inclusion of the following language in § 77, sub. n (11 U.S.C. § 205, sub. n) of the Bankruptcy Act in 1933[2] that it

2. The present § 77, sub. n was titled § 77, sub. s in 1933. It was renumerated to § 77, sub. n in 1935 and amended in 1939 to include preferences for rail-

uses specific language where it intends to prefer negligence claims and have them paid as operating expenses and, by its failure to include such language in § 62 or 64 of the Bankruptcy Act in any of the several revisions of these sections since 1933, that there is a Congressional intent not to treat such tort claims as operating expenses and not to give them a preference, § 64, sub. a(1) does not cover this claim by Reading Company:

> "In proceedings under this section, and in equity receiverships of railroad corporations now or hereafter pending in any court of the United States, claims for personal injuries to employees of a railroad corporation, claims of personal representatives of deceased employees * * * brought against such railroad corporation * * * shall be preferred and paid out of the assets of such railroad corporation as operating expenses of such railroad."

Authorities have recognized generally the significance of the special provision in § 77, sub. n applying to railroads. In 5 Collier on Bankruptcy, § 77.21, at page 568, the following statement appears:

> "It is extremely doubtful, however, if § 64, governing priorities in ordinary bankruptcy, can be considered generally applicable. The classification of priorities there set forth is not adaptable to railroad reorganization, * * *."

See, also, In Re Hudson & Manhattan Railroad Company, 178 F.Supp. 103 (S.D.N.Y.1955); aff'd. Augus v. Stichman, 273 F.2d 707 (2nd Cir. 1960).[3]

(b) The legislative changes to § 64, sub. a(1) require its limitation to the type of expenses specified in that section and to claims for expenses of preserving the bankrupt's estate.

In the 1952 Congressional Reports concerning the part of § 64, sub. a(1) relating to priorities to be given to administration expenses in ensuing bankruptcies, Congress made clear that administration expenses to be given priorities were those that would prevent "a breakdown of administration."[4] A similar Congressional Report in 1962 accompanying the bill which adopted § 64, sub. a(1), as quoted at page 4 above, makes clear that the enumerated expenses in the section as worded in 1962 are the type of "costs and expenses of administration" contemplated.[5] The United States Court of Appeals for the Third Circuit has emphasized that the legislative history of this section requires that these "costs and expenses" must be related to "development, preservation or distribution of the bankrupt's assets," using this language in In Re Connecticut Motor Lines, Inc., 336 F.2d 96, 102 (3rd Cir. 1964):

> " * * * Congress indicated both that all items in Section 64, sub. a (1) were costs and expenses of administration, and that the expression 'costs and expenses of administration' was not a catchall within the first priority. With such a Congressional intent apparent, it is preferable to isolate from Section 64, sub. a(1), as falling without a meaningful view of costs and expenses of administration, *those expenses which, though they can be considered post-bankruptcy items, are unrelated to development, pres-*

---

road employees holding tort claims in equity receiverships.

3. It was held that tort claims were not entitled to a priority since § 77, sub. n did not apply to the debtor.

4. See Senate Report No. 1395, 82nd Cong. 2d Sess. (1952) 4, U.S. Congressional and Administrative News p. 1960, which states in part:

> " * * * Unless provision is made for payment of the costs and expenses

necessary to liquidate, administer and close the estate in the ensuing bankruptcy proceeding, ahead of all prior incurred and unpaid administration costs and expenses, there is always danger of a breakdown of administration. * * * "

5. See Senate Report No. 1954, accompanying the amending legislation, H.R. 5393, August 28, 1962, U.S.Code Congressional and Administrative News, p. 2603 (1962).

*ervation or distribution of the bankrupt's assets."* (Emphasis supplied.)

Allowance of claims such as petitioner's will not "develop, preserve or distribute this estate" but in cases such as this would decimate it with $3,500,000. of claims. The undersigned agrees that the repairing of these pipes in the Fretz Building is an activity related to the preservation of the bankrupt's assets and the cost of such activity would be an expense of administration. However, damage caused by any fire resulting from the negligent manner in which this activity was carried on can hardly be considered an expense related to the preservation of the bankrupt's assets. Specific language should be secured from Congress to accomplish the result sought by the Reading Company, just as Congress acted in 1962 to cover specifically the claims disallowed in Guerin v. Weil, Gotshal & Manges, supra, 205 F.2d at 305.[6]

The Supreme Court, in discussing the subordination by § 67, sub. c of certain secured liens to the claims under § 64, sub. a(1) and (2), stated in Goggin v. Division of Labor Law Enforcement of Cal., 336 U.S. 118, at 127, 69 S.Ct. 469, at 474, 93 L.Ed. 543 (1949):

"The background of § 67, sub. c suggests a conscious purpose to give a narrowly limited priority to administrative expenses and to certain wage claims * * *."

The Supreme Court based the above statement on a part of the legislative history of § 67, sub. c indicating that such "narrowly limited priority" was necessary to secure effective administra-

tion of the bankruptcy law. This part of the legislative history relevant to the case at bar quoted by the Supreme Court is (see footnote 8, p. 128, 69 S.Ct. p. 474):

" 'It is significant that in recent years state legislatures have been enacting special legislation in favor of tax claims, public debts, and a variety of private claims. Statistics in the bankruptcy cases show that the effective administration of the bankruptcy law has seriously suffered therefrom. Such claims * * * consume the entire estate, leaving nothing for the payment of the costs and expenses of administration incurred in reducing the assets to cash. * * *

" 'There is therefore need for a provision to protect the administration costs and expenses; * * *.'" (From an explanatory note attributed to Jacob I. Weinstein in a Committee Report Analysis of H.R. 12889, 74th Cong., 2d Sess. (1936), cited at 336 U.S. 127–129, 69 S.Ct. 469.)

Thus, administration costs and expenses are those which promote effective administration of the bankruptcy law. Petitioner's claim is not such a cost or expense.

3. The decided cases indicate a holding that this claim does not fall within the scope of § 64, sub. a(1).

There are no cases which have directly considered the issue raised by the facts on this record. However, there are two Circuit Court of Appeals cases which indicate that a tort claim is not an administrative expense within § 64,

6. Senate Report No. 1954, referred to in footnote 5 above, contains this language (see p. 2608 of 1962 U.S.Code, Congressional and Administrative News):

"The expenses of petitioning creditors who have obtained an adjudication after a contest constitute a proper cost and expense of administration. These expenses should include compensation paid to accountants and ap-

praisers whose services were necessary. In the case of Guerin v. Weil, Gotshal & Manges (205 F.2d 302 (2d Cir. 1953)), the court disallowed such expenses, however, and suggested that their inclusion would require specific congressional action (205 F.2d at 302). This inclusion would be accomplished by the proposed amendment of section 64a(1), which adds new language immediately preceding the proviso."

sub. a(1). In Re Hudson, supra,[7] held that tort claims which arose after the filing of a petition were not entitled to a priority as an administrative expense where the proceeding was a Chapter X reorganization. The claimants argued that the bankrupt qualified as a railroad corporation and that they, therefore, fell within § 77, sub. n of the Bankruptcy Act. Although § 64, sub. a(1) was not discussed, the court implicitly held that tort claims were not entitled to a priority under that section when it held that the bankrupt was not a railroad corporation and that the claimants were consequently not entitled to priority as an operating expense. In re Connecticut Motor Lines, Inc., supra, is indicative of the narrow view that the Court of Appeals for the Third Circuit has taken of the scope of § 64, sub. a(1). Although this case was not concerned with the issue of whether or not tort claimants were entitled to a priority under this section, its holding did limit this section to only those post-bankruptcy expenses which are related to development, preservation or distribution of the bankrupt's estate. As discussed above, the undersigned is of the opinion that the instant petitioner's claim is not such an expense.

B. The Referee correctly expunged the Reading Company's claim from the record.

■ Since the Reading Company's claim does not qualify as an administration expense, the Referee was correct in expunging it from the record, as it was not provable as an unsecured claim under § 63 of the Bankruptcy Act, 11 U.S.C. § 103. "In order to be entitled to a *pro rata* share in the estate, a claim must have been allowed, and allowance depends first of all upon due and timely proof and filing." 3 Collier on Bankruptcy, 14th Ed., § 63.05, at p. 1780. Section 63, entitled "Debts Which May Be Proved," states that negligence actions must be instituted prior to and be

pending at the time of filing the petition in bankruptcy in order to be provable. The date of the filing of the petition in bankruptcy is considered to be November 16, 1962, the date of the filing of the petition under Chapter XI, § 378, of the Bankruptcy Act, 11 U.S.C. § 778. Since the fire occurred on January 1, 1963, all actions and claims for the alleged negligence have been filed subsequent to the filing of the petition in bankruptcy. Thus, any claim of the Reading Company arising out of this fire is not provable as an unsecured claim under § 63 of the Act and, therefore, not entitled to a pro rata share of the estate.

The Referee properly expunged the Reading Company's claim from the record.

The able briefs of the parties have been filed as Documents 9–12. Comments on several cases relied on by the Reading Company are contained in Appendix A.

### ORDER

And now, June 9, 1965, it is ordered that the Petition for Review of the Reading Company, certified by the referee's certificate for review dated October 9, 1964, is denied and that the Order of the Referee dated September 30, 1964, is affirmed.

### APPENDIX A

TO MEMORANDUM OPINION AND ORDER OF JUNE 1965 IN In the Matter of I. J. KNIGHT REALTY CORPORATION, CAUSE NO 27540 in BANKRUPTCY

Petitioner first asserts that all the text writers agree that tort damage claims are allowable as administrative expenses. After this assertion, petitioner quotes from four different sources which generally state that damages from torts arising during the period that a business is being operated by a receiver are considered a part of the operating expense of the receivership. However, the state-

---

7. The opinion relied on in this case is by the District Court and it was affirmed by the Second Circuit, 273 F.2d 708.

ments of these writers, when taken in context, are concerned with the broad range of receiverships in general and none of the cases cited as authority by the writers for the quoted statements are at all similar to the case at bar.[1] The cases relied on deal mainly with railroad receiverships or state receiverships, and none of them discusses the allowance of tort damages during bankruptcy as priority claims under § 64, sub. a(1). Of the several cases cited by the petitioner, only two of them discuss the interpretation of "costs and expenses of administration" as that phrase is used in § 64, sub. a(1): In re Progress Lektro Shave Corp., 35 F.Supp. 915 (D. Conn.1940); and In re Connecticut Motor Lines, Inc., 336 F.2d 96 (3rd Cir. 1964). Neither of these cases is concerned with the issue of whether tort damages suffered during the period of operation of a business by a Receiver or Trustee are administrative expenses. Other cases cited do concern themselves with whether such claims are administrative expenses, but do not discuss whether or not such are allowable under the section in question.

### Cases Where Estate Profited From Tort Claim

In In re Progress Lektro Corp., supra, relied on by the petitioner, the facts are distinguishable from the instant case as there a trustee sold for the benefit of the estate an article covered by the claimant's patent, thus depriving the patentee of his exclusive right of sale. The court found this to be a violation of the patent laws and it held the plenary powers of Congress in the field of bankruptcy to be subject to the guarantees of the patent laws. In other words, the money received by the estate for the sale of this patented article in reality belonged to the patentee and to have denied him a priority would have been to deny him the right to his own property. In the case at bar, there has been no appropriation to the benefit of the estate of the petitioner.

Bereth v. Sparks, 51 F.2d 441, 80 A.L.R. 909 (7th Cir. 1931), is similarly distinguishable. This case is concerned with a bank receivership and not with § 64, sub. a(1), but will be discussed for purposes of relevancy as to what constitutes "costs and expenses of administration." In Berth, the claim arose out of a bank's unlawful attachment of the claimant's personal property. Subsequent to such attachment, the bank was placed in receivership. The claimant sued the receiver in a replevin action and recovered possession of the property. If that claim had been denied a priority, as in the Lektro Corp. case, supra, the claimant would have been denied access to his own property.

In another case relied on by petitioner, In re Hunter, 151 F. 904 (E.D.Pa.1907), the court allowed a claim for loss of rent where a trustee, just prior to the sale of the bankrupt's property, intentionally refused to remove the bankrupt's property for the purpose of avoiding the removal expense. The court stated that this claim could not be proved under § 63, but did not state why the claim was being allowed. The court held that the trustee was personally liable on the landlord's claim, but that the estate was liable over to the trustee, "the estate having profited by the trespass." Thus, this case is not authority for the proposition that tort damages arising during

---

1. E. g., 3 Collier on Bankruptcy, § 62.15, p. 1540:

"Among other expenses incident to conducting a business and therefore allowable as administrative expenditure may be * * * payments of claims for personal injuries inflicted in the operation of a business * * *."

The case relied on in the footnote for this statement held that a personal injury claim accrued during the operation of a railroad by a receiver was a cost of administration. Railroad reorganizations have been specifically recognized to have peculiar problems and the cases allowing these tort claims to be costs of administration are based on § 77, sub. n, not § 64, sub. a(1) (see part A–2 (a) of the foregoing opinion).

receivership are costs of administration because such is not discussed in the case and, even if the damages recovered were allowed as costs of administration, it would have been on the theory that these damages were accrued as "a cost of preserving the estate." If recovery is allowed in the instant case, it cannot be on the theory that the damages were intentionally accrued in order to preserve the estate.

### Other Cases Relied On By Petitioner

Petitioner places heavy reliance on a statement by Judge Learned Hand in Vass v. Conron, 59 F.2d 969, at 971 (2nd Cir. 1932).[2] In that case, a state court action against a receiver and trustee was enjoined as being in an improper forum. The undersigned agrees with the Referee that the statement relied on by petitioner was dictum and rejects the petitioner's contention that Judge Hand could not constitutionally enjoin the action in the state court without discussing what comprises an administrative expense.

Two other cases cited by the petitioner in support of its contention that its tort claim should be accorded priority are Cowdrey v. Galveston, etc. R. R. Co., 93 U.S. 352, 23 L.Ed. 950 (1876), and Farmers' Loan and Trust Co. v. Northern Pac. R. Co., 74 F. 431 (D.Ore.1896). Both of these are cases involving railroads in receivership. Once again, neither involves the question of interpreting § 64, sub. a(1), but both are cited for their relevance to the determination of administration expenses during receiverships in general. In many old cases railroads in receivership allowed negligence claims as administrative expenses. However, as discussed in the foregoing opinion (part A–2(a)), the

enactment of § 77 of the Bankruptcy Act in 1933 was a recognition by Congress of the peculiar problems entailed in the reorganization of railroads engaged in interstate commerce.[3]

2. " * * * the liquidation of the lessee's resulting damages was as much a part of the usual administration in bankruptcy, as that of the pay of accountants, custodians or other assistants, employed by the trustee."

3. In its reply brief, petitioner cited one other case, Valdes v. Feliciano, 267 F.2d 91 (1st Cir. 1959), which it feels is significant because of a statement made

by Judge Hastie in the opinion. As noted by the letter of counsel for the trustee in bankruptcy dated March 8, 1965 (attached to Document 9), no significance may be attached to the quoted statement because it starts with the words "It is argued that * * *", thus showing that the court there was considering the claim as an administrative expense only in a hypothetical sense. Further, the claim was against a railroad receiver.